**Dennis HAMILTON, Plaintiff-Appellee,**

v.

**Roger V. ENDELL, et al., Defendants-Appellants.**

**No. 91–35651.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 19, 1992.

Decided Dec. 15, 1992.

Larry A. McKinstry, Asst. Atty. Gen., Juneau, AK, for defendants-appellants.

Kenneth C. Kirk, Anchorage, AK, for plaintiff-appellee.

Before: HUG, D.W. NELSON, T.G. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

Appellants are various prison officials who were sued by prisoner Hamilton. Hamilton alleges that while he was in custody the officials were deliberately indifferent to his serious medical needs, violating his constitutional right to be free from cruel and unusual punishment. The prison officials sought summary judgment on the basis of qualified immunity. The district court denied summary judgment and the defendants now appeal, arguing that there were no issues of material fact which would tend to show that they were deliberately indifferent to Hamilton's medical needs. We find that only six of the named defendants are proper parties to the action. We affirm the district court's denial of the motion for summary judgment with respect to three of these defendants. Per stipulation of Hamilton's counsel at oral argument, we order the district court to dismiss the rest.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee Dennis Hamilton was a state prisoner confined to the Fairbanks Correctional Center ("FCC") in Fairbanks, Alaska. After complaining of recurring problems with his right ear, Hamilton was referred to a private physician, Dr. Richard Raugust, who operated on Hamilton's ear in 1984. Eight days after the operation, FCC prison officials attempted to transfer Hamilton to a federal prison facility in El Reno, Oklahoma. Hamilton was flown from Fairbanks to Anchorage for the first leg of the trip, but the trip was aborted in Anchorage after Hamilton obtained an emergency stay of transportation due to extreme ear pain. A few weeks later, Dr. Raugust wrote a letter to prison officials stating that Hamilton should not be allowed to fly for six weeks following surgery. Seven months later, Dr. Raugust wrote another letter advising that Hamilton was continuing to receive medical care for his ear condition, and that he should not be allowed to fly until his medical condition stabilized.

Sometime early in 1985 FCC officials again scheduled Hamilton to be transferred to the Oklahoma prison. On February 6, 1985, Hamilton filed an administrative appeal, arguing that the flight would damage his ear and citing other reasons why he should not be transferred. Defendant Gail Frank, the FCC Superintendent, denied the appeal. Hamilton then filed an appeal in Alaska Superior Court. On June 14, 1985, the Assistant Attorney General filed a memorandum in opposition to Hamilton's motion to stay his transfer, arguing that the motion was premature because Hamilton would not be moved until his recuperation was complete.

On July 2, 1985, Dr. Raugust again operated on Hamilton's ear. Six days later, Hamilton's appeal of the transfer was apparently reconsidered and again denied, this time by defendant Art Schmidt, the Deputy Commissioner of the Alaska Department of Corrections. During this period the prison officials solicited a second medical opinion from FCC contract physician Dr. Donald Hudson. In a July 19, 1985 letter, Dr. Hudson advised the prison officials that based upon his personal experience and his consultation with an ear, nose, and throat specialist, Hamilton should be able to travel immediately after his surgery. The record indicates Dr. Hudson neither contacted Dr. Raugust nor examined Hamilton or his medical records before issuing the opinion.

On July 26, 1985, Dr. Raugust wrote another letter to FCC officials, stating that Hamilton's ear had not yet healed and that he should therefore not fly anywhere for about six months. Less than one month later, in reliance upon Dr. Hudson's letter, prison officials again ordered Hamilton to be transferred to Oklahoma. Defendant Robert Spinde was the Chief Classification Officer of the Alaska Department of Corrections at the time, and apparently had the final authority over the transfer decision. On August 8, 1985, Hamilton was flown from Alaska to Oklahoma. Hamilton alleges that this flight caused severe damage to his ear.[1]

1. Although Hamilton does not allege the exact    damage caused by this flight, during the first

In 1987, Hamilton filed the present civil rights suit in forma pauperis for damages for violation of his right to be free from cruel and unusual punishment. After reviewing Hamilton's complaint, Magistrate John Roberts concluded that Hamilton had stated a claim under 42 U.S.C. § 1983 against Robert Spinde, Art Schmidt, Gail Frank, Steve Carr, Sgt. Baudrue, and Sgt. Gonzalas. The magistrate did not direct service on the other twelve defendants in the case, and Hamilton did not serve the defendants himself.

The defendants sought summary judgment on the grounds that Hamilton failed to state a claim for relief under § 1983 and that the prison officials were immune from liability under the doctrine of qualified immunity. The district court, the Honorable James K. Singleton presiding, denied the motion for summary judgment and the defendants appealed. This court denied the petition to appeal on the issue of whether Hamilton failed to state a claim; appeal on the issue of qualified immunity is allowed as of right. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (denials of summary judgment on the basis of qualified immunity are immediately appealable). We have jurisdiction under 28 U.S.C. § 1291.

## II. *ANALYSIS*

■ A district court's determination regarding qualified immunity is reviewed *de novo*. *White v. Pierce County*, 797 F.2d 812, 814 (9th Cir.1986). On appeal from summary judgment, the appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

### A. Proper Service Issue

■ Hamilton named 18 defendants in his original complaint. After reviewing the complaint, Magistrate John Roberts ordered service of process on six: prison officials Robert Spinde, Art Schmidt, Gail Frank, Steve Carr, Sgt. Baudrue, and Sgt. Gonzalas; he refused to order service of process on the remaining 12 defendants. The issue of Hamilton's failure to serve the remaining 12 defendants was raised by the defendants for the first time on appeal. As the necessary facts are fully developed, the issue is properly considered here. *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985).

Federal Rule of Civil Procedure 4(j) required Hamilton to effect service of process within 120 days after filing the complaint. In mandating service within 120 days, "Congress balanced the possible loss of a litigant's federal cause of action against the need to encourage diligent prosecution of lawsuits." *Townsel v. County of Contra Costa*, 820 F.2d 319, 321 (9th Cir.1987). Although there is a "good cause" exception to Rule 4(j), it applies only in limited circumstances, and inadvertent error or ignorance of governing rules alone will not excuse a litigant's failure to effect timely service, *Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir.1985).

Nothing in the record persuades us that Hamilton had "good cause" for failing to comply with the dictates of Rule 4(j). At the time the magistrate ordered service on only six of the defendants, Hamilton had an opportunity to object to the order and to request service for the rest. In addition, Hamilton could have served the other defendants by certified mail. He fails to show that he pursued any of these alternatives and there is no evidence that any of the remaining 12 defendants was ever served.

We hold that Schmidt, Spinde, Frank, Carr, Baudrue, and Gonzalas are the only proper defendants in this case. Due to

---

flight Hamilton experienced severe pain and following the flight his ear drained blood and other fluids for at least nine months. After learning that Hamilton had been forced to fly a second time, Dr. Raugust wrote to Hamilton

advising him that "all bets [were] off" as to his future ability to hear properly because the rapid changes in altitude could have punctured the sacule of Hamilton's inner ear, causing permanent and irreparable damage.

Hamilton's failure to serve in a timely manner defendants Roger Endell, Winston Oxendine, Dr. Strothsman, Dr. Swindeman, Lorie Veter, Virginia Roberts, Tom Jasper, Jan Larson, Cathy Sandstrom, Mr. Massingill, and Don Bennett, and the defendant identified as "(NAME UNKNOWN)," they should be dismissed from this case by the district court.

### B. Qualified Immunity Claim

■ "Government officials who perform discretionary functions are protected from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lum v. Jensen,* 876 F.2d 1385, 1386 (9th Cir.1989), *cert. denied,* 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990), (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In order to determine whether an official is entitled to qualified immunity, a court must (1) identify the right allegedly violated, (2) determine whether the right was "clearly established," and (3) determine whether a reasonable official would have believed his or her conduct to be lawful. *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991). Qualified immunity is an affirmative defense; if the plaintiff proves that the right allegedly violated was clearly established, the burden shifts to the defendant official to prove that his or her conduct was reasonable even though it might have violated the law. *Id.*

■ Hamilton alleges that the prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment. At the time Hamilton was flown to Oklahoma, the law regarding the medical treatment of prisoners was "clearly established." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). The government is required to provide medical care for those whom it punishes by incarceration, and prison officials who act with "deliberate indifference" to an inmate's serious medical needs violate the Eighth Amendment. *Id.,* 429 U.S. at 104, 97 S.Ct. at 291.

A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law. *Albers v. Whitley,* 743 F.2d 1372, 1376 (9th Cir.1984), *rev'd on other grounds,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In order to determine whether summary judgment was properly denied, we need only determine whether the plaintiff established a genuine issue of material fact as to whether the defendant prison officials were deliberately indifferent to his medical needs.

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hunt v. Dental Dept.,* 865 F.2d 198, 201 (9th Cir. 1989). Deliberate indifference involves the "unnecessary and wanton infliction of pain," *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291, but a finding of "an express intent to inflict unnecessary pain is not required." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

■ The defendants maintain that the decision to transfer Hamilton to Oklahoma did not evidence deliberate indifference to his medical needs because it was made in reliance on the opinion of Fairbanks Correctional Center contract physician Dr. Hudson. The defendants may be correct insofar as prison officials are shielded from liability to the extent their actions are made in good faith reliance on a medical opinion. *See Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990). That, however, is not the question presented by this case. This case is more akin to cases finding deliberate indifference where prison officials and doctors deliberately ignored the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *See White v. Napoleon,* 897 F.2d 103, 106–10 (3d Cir.1990); *Martinez v. Mancusi,* 443 F.2d 921, 924 (2d Cir.1970),

*cert. denied,* 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971). Here the prison officials had two conflicting opinions to consider in making their decision. The relevant inquiry is whether the prison officials were entitled to rely upon Dr. Hudson's opinion, knowing all that they did regarding Hamilton's situation and the relative merits of the two opinions.

Dr. Raugust was Hamilton's treating physician and surgeon. He also was the physician who was responsible for caring for Hamilton after complications ensued from his first flight. Dr. Raugust's specific orders were that Hamilton was not to fly. Rather than allowing Hamilton to recuperate in compliance with Raugust's directive, the officials chose instead to rely upon Dr. Hudson's opinion. There is nothing in Dr. Hudson's letter nor in the record to indicate that Dr. Hudson had ever treated Hamilton, reviewed his file, or so much as looked in his ear. In fact, there is no indication that Dr. Hudson ever discussed Hamilton's condition with the treating physician before issuing his opinion.

Dr. Hudson's opinion was prepared at the express request of the prison officials. Dr. Hudson's letter indicated only that he, and a specialist he contacted, both believed that the *normal* procedure following the operation performed on Hamilton would be to allow the patient to fly. Hamilton alleges that Dr. Hudson's opinion was not solicited in good faith, and that it was sought simply as a device to allow the prison official to proceed with their predetermined decision to effectuate his transfer to Oklahoma.

Viewing Hamilton's allegations in the most favorable light, we find that the decision to force Hamilton to fly to Oklahoma could have constituted deliberate indifference to his medical needs, and therefore the district court's denial of appellant's summary judgment motion was appropriate. The prison officials forced Hamilton to fly in contravention of his treating physician's specific orders and in total disregard for Hamilton's past experience with ear pain and injury when flying. By choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of medical treatment, and the "unnecessary and wanton infliction of pain."

Because there is no respondeat superior liability under § 1983, the district court properly denied summary judgment for those officials whom the evidence tended to show were direct participants in the transfer decision. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor,* 880 F.2d at 1045. We find that Hamilton sufficiently demonstrated potential liability with regard to three of the prison officials: Robert Spinde, the Chief Classification Officer of the Alaska Department of Corrections; Art Schmidt, the Deputy Commissioner of the Alaska Department of Corrections; and Gail Frank, the Superintendent for the Fairbanks Correctional Center. There is evidence that both Spinde and Frank had supervisory authority over inmate transfer decisions and were personally involved with Hamilton's case, and that both Schmidt and Frank denied Hamilton's appeals of the transfer.

Although further factual development is necessary to determine the exact nature of each official's involvement with the transfer decision, enough evidence has been introduced to create a triable question as to whether Spinde, Schmidt and Frank were deliberately indifferent to Hamilton's medical needs. We hold that summary judgment properly was denied as to defendants Spinde, Schmidt and Frank, and affirm the district court judgment. Per the stipulation of counsel for Hamilton at oral argument, we remand to the district court with instructions to dismiss defendants Carr, Baudrue, and Gonzalas.

### III.  *CONCLUSION*

Due to Hamilton's failure to properly serve 12 of the defendants under Fed. R.Civ.Proc. 4(j), and per the stipulation of

Hamilton's counsel at oral argument, we REMAND with instructions for the district court to DISMISS all defendants except Spinde, Schmidt, and Frank. We AFFIRM the district court's denial of summary judgment with respect to defendants Spinde, Schmidt and Frank.