Timothy E. WAKEFIELD,
Plaintiff–Appellant,

v.

John THOMPSON, Parole Agent; James Gomez, Director, California Department of Corrections; Daniel Vasquez, ex-Warden, San Quentin Prison; John Dupre, Staff Psychiatrist, San Quentin Prison; and John Doe, Correctional Officer, San Quentin Prison, Defendants–Appellees.

No. 96–16323.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 8, 1999.[1]

Decided May 27, 1999.

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Timothy E. Wakefield, pro se, Vacaville, California, for the plaintiff-appellant.

Bruce M. Slavin, Deputy Attorney General, San Francisco, California, for the defendants-appellees.

Before: KRAVITCH,[2] REINHARDT, and T.G. NELSON, Circuit Judges.

REINHARDT, Circuit Judge:

Timothy Wakefield appeals the district court's dismissal of his § 1983 action against John Doe, a correctional officer at San Quentin Prison. Wakefield alleges that Doe violated his Eighth Amendment rights by refusing to provide him with prescription psychotropic medication upon his release from prison. He asserts that Doe exhibited deliberate indifference to his serious medical needs. Because we find that Wakefield has stated a cause of action upon which relief might be granted, we reverse the district court's dismissal of Wakefield's action against Doe, and remand for further proceedings in the district court.[3]

## I.

### BACKGROUND

According to Dr. John Dupre, the Staff Psychiatrist at San Quentin Prison, Wake-

---

**2.** The Honorable Phyllis Kravitch, Senior Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

**3.** We have, in an unpublished memorandum disposition issued today, affirmed the district court's dismissal of Wakefield's § 1983 action against defendants Gomez, Vasquez, and Dupre, and the court's grant of summary judgment to defendant Thompson.

field suffers from Organic Delusional Disorder. The disorder, when untreated, renders Wakefield prone to violent outbursts. In order to manage this disorder, Wakefield took Navane, a psychotropic medication. Indeed, while he was a prisoner at San Quentin, Navane was prescribed for Wakefield, and delivered to him, at the direction of Dr. Dupre.

According to Wakefield's allegations, he met with Dr. Dupre shortly before he was released from San Quentin. At this time, the doctor wrote Wakefield a prescription for two-weeks worth of Navane to be filled by prison officials and dispensed upon Wakefield's release from prison. On the day of his release, Wakefield asked John Doe, the officer handling the release procedure, for his two-week supply of Navane. Doe replied that "there wasn't any medication available." Despite Wakefield's protestations that the medicine had been prescribed and that without the medicine he would suffer a relapse of his mental disorder, Doe refused even to call the prison medical staff to check on Wakefield's prescription.[4] Doe's only explanation for his actions was that the prison was "late paroling," in other words, that he was too busy.

Wakefield was, accordingly, released from San Quentin prison without the medication necessary to control his mental disorder. According to his allegations, eleven days after his release he suffered a relapse. The relapse led to a violent outburst and to Wakefield's subsequent arrest.

In dismissing Wakefield's civil rights action, the district court stated that "Doe defendants are not favored in the Ninth Circuit," and held that "[a]ccordingly, the Doe defendants are Dismissed." (CR 11 at 8) (citing *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir.1980)). The court provided no further analysis of Wakefield's claim

against Doe, nor any statement as to whether Wakefield had or had not stated a claim against him upon which relief could be granted. The court ordered that Wakefield's complaint against Doe was "dismissed with prejudice to filing another unpaid complaint." (CR 11 at 5).

Wakefield appeals the district court's dismissal of defendant John Doe. Because the district court erred in dismissing Doe on the ground that this court does not "favor" John Doe defendants, and because we find that Wakefield has stated a claim against Doe, we reverse and remand.

## II.

## DISCUSSION

### A.

 Although neither party has addressed the question, we must raise issues concerning our jurisdiction sua sponte, *see, e.g., Abernathy v. Southern California Edison,* 885 F.2d 525, 527 (9th Cir.1989). Under 28 U.S.C. § 1291, this court has jurisdiction to hear appeals of "final decisions" of the district court. Although there are exceptions to the rule, dismissals with prejudice generally constitute final orders, while dismissals without prejudice generally do not. *See, e.g., Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1432 (9th Cir.1984). Here, the district court's dismissal of Wakefield's § 1983 action against Doe was "with prejudice to filing another unpaid complaint." (CR 11). Although the court stated that Wakefield could file a third amended complaint, it made clear that Wakefield could "not file any more unpaid amended complaints." (CR 11 at 9). While we have not previously had occasion to consider whether such a dismissal amounts to an appeal-

---

4. Wakefield also pled that "[t]here should be no problem in finding officer John Doe ... the officer that released [me] on March 13, 1995." Wakefield informed the court that Doe's identity could be determined by inspecting the "parole papers that plaintiff signed at

the time of his release" and the "Duty Roster for that day." Plaintiff also expressed his intention to subpoena this information and "amend the complaint later with the correct information."

able final order, we conclude that, at least in this case, it does.

The Supreme Court has held that the finality requirement should be given a practical rather than a technical construction. *See Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). We have held accordingly that "an order which effectively sends a party out of court is appealable." *United States v. Lee,* 786 F.2d 951, 956 (9th Cir.1986); *see also Herrington v. County of Sonoma,* 706 F.2d 938, 939 (9th Cir.1983). Wakefield's in forma pauperis status reflects the fact that he could not afford to file a paid complaint at the relevant time. Under the circumstances, for purposes of § 1291, a dismissal of his complaint with prejudice as to the filing of any further unpaid complaints "effectively sen[t Wakefield] out of court." *Lee,* 786 F.2d at 956. Accordingly, the order of dismissal was final and appealable, and we have jurisdiction under § 1291.

### B.

■ We next deal with the district court's conclusion that dismissal of defendant Doe was required under *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir.1980). In *Gillespie* we stated in dicta, as the district court reports, that "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored." *Id.* at 642. Our *holding* in *Gillespie,* however, was different. We held that in circumstances, such as those before us today, "where the identity of the alleged defendant[ ][is] not [ ] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.* We concluded in *Gillespie* that the district court's dismissal of the complaint against the John Doe defendant was error. *See id.* at 643. The case before us is indistinguishable. Far from supporting the district court's action, *Gillespie* demonstrates that the district court erred in dismissing Wakefield's complaint against Doe simply because Wakefield was not aware of Doe's identity at the time he filed his complaint.

### C.

The more substantive question we must resolve is whether the district court's dismissal of the complaint against Doe was appropriate because, even if Doe's identity is discovered, the complaint would have to be dismissed on other grounds. *See, e.g., id.* at 642. That is, if Wakefield's complaint against Doe does not state a claim upon which relief can be granted, we must affirm the district court's dismissal. *See id.* We conclude, however, that Wakefield's allegation that Doe exhibited deliberate indifference to his serious medical needs by failing to provide him with the medicine prescribed by Dr. Dupre, or to make any effort to obtain it for him, adequately states a § 1983 claim for the violation of his Eighth and Fourteenth Amendment rights.

■ As is well established, and as the respondent asserts, the Due Process Clause generally does not place affirmative duties on the state. *See, e.g., DeShaney v. Winnebago Cty. Dep't of Soc. Srvs.,* 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The state, for example, has no duty to fund medical services for the general public. *See Harris v. McRae,* 448 U.S. 297, 317–18, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). Over twenty years ago, however, the Supreme Court recognized a critical exception to this rule. In *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court explained that "[i]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." In the Court's words, the government has an "obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.* at 103. The *Estelle* Court concluded,

accordingly, that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, mandates that states provide adequate medical care to all of their prisoners. *Id.* at 104–05.

In *DeShaney*, 489 U.S. at 198–202, the Court re-examined and clarified the *Estelle* rule. In that case, the petitioner—the guardian of a child subjected to severe abuse by his father—sued the Department of Social Services alleging that the Department's failure to remove the child from his father's custody violated due process. In rejecting DeShaney's claim, the Court offered this explanation of the *Estelle* rule:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but *from the limitation which it has imposed on his freedom to act on his own behalf.*

*Id.* at 199–200 (internal citations omitted) (emphasis added).

As the cases themselves recognize, it is clear that while a prisoner is actually incarcerated the state restricts completely his ability to secure medical care "on his own behalf." For that reason, the Court has held, the state must provide prisoners with the medical care they need during the period of their incarceration. *See Estelle,* 429 U.S. at 103–05. It is a matter of common sense, however, that a prisoner's ability to secure medication "on his own behalf" is not necessarily restored the instant he walks through the prison gates and into the civilian world. Although many patients must take their medication one or more times a day, it may take a number of days, or possibly even weeks, for a recently released prisoner to find a doctor, schedule an examination, obtain a diagnosis, and have a prescription filled.[5] Accordingly, the period of time during which prisoners are unable to secure medication "on their own behalf" may extend beyond the period of actual incarceration. Under the reasoning of *Estelle* and *DeShaney,* the state's responsibility to provide a temporary supply of medication to prisoners in such cases extends beyond that period as well.

■ We therefore hold that the state must provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply. A state's failure to provide medication sufficient to cover this transitional period amounts to an abdication of its responsibility to provide medical care to those, who by reason of incarceration, are unable to provide for their own medical needs.

### D.

■ As dictated by our precedents, in order to state a § 1983 claim based on the failure to provide such a supply of prescription medication, the plaintiff must allege facts which if proved would establish that the prison official or officials acted with "deliberate indifference" to a "serious medical need." *See, e.g., Frost v. Agnos,* 152 F.3d 1124, 1130 (9th Cir.1998)(*citing*

---

5. Indeed, it was undoubtedly for this very reason that Dr. Dupre wrote Wakefield a pre-scription for two-weeks worth of Navane to be filled upon his release from San Quentin.

*Estelle,* 429 U.S. at 104). Our cases make clear that mere negligence in the provision of medical care does not constitute a constitutional violation. *See id.*

Estelle, however, instructs that prison officials act with deliberate indifference when they "intentionally interfer[e] with ... treatment once prescribed." 429 U.S. at 104–05. Following *Estelle,* we have held that a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon. For example, in *Hamilton v. Endell,* 981 F.2d 1062 (9th Cir.1992), the defendant officials of the Fairbanks Correctional Center transferred the plaintiff to an Oklahoma prison via airplane despite the fact that Hamilton's physician had instructed that, due to a chronic ear problem, Hamilton "should ... not fly anywhere for. about six months." *Id.* at 1064. As a result of the flight, Hamilton alleged that he suffered severe damage to his ear. We concluded that the case was "akin to cases finding deliberate indifference where prison officials and doctors deliberately ignore[ ] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." *Id.* at 1066–67 (*citing White v. Napoleon,* 897 F.2d 103, 106–10 (3d Cir.1990); *Martinez v. Mancusi,* 443 F.2d 921, 924 (2d Cir. 1970)). Accordingly, we held that, viewing Hamilton's allegations in the most favorable light, the prison official's "decision to force Hamilton to fly to Oklahoma could have constituted deliberate indifference to his medical needs." *Hamilton,* 981 F.2d at 1067.[6]

In short, allegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference. Such are the allegations before us. According to Wakefield's complaint, Dr. Dupre prescribed two-weeks worth of Navane to be dispensed by prison authorities at the time of Wakefield's release from San Quentin. Despite this instruction, defendant Doe failed to provide Wakefield with the psychotropic medication the prison doctor had determined that he needed. Doe, moreover, refused to contact the prison medical staff to inquire into the location of that medication within the prison, or to make any other effort on Wakefield's behalf. Doe's only explanation for his action was that he was too busy—he was running behind in paroling prisoners that day. We hold that Wakefield has alleged facts sufficient to support a claim that Doe's actions constituted deliberate indifference to Wakefield's medical needs.

Under these circumstances, we conclude that the district court erred in dismissing Wakefield's complaint against defendant Doe. Because the state has a responsibility under the Eighth Amendment to provide outgoing prisoners being treated for a medical condition with a sufficient supply of medication to cover their transition to the outside world, and because Wakefield's allegations support a claim that Doe's actions constitute deliberate indifference, Wakefield has stated a valid § 1983 claim.

## III.

## CONCLUSION

The order of the district court is reversed. The case is remanded to the dis-

---

6. Our court is not alone in holding that when prison officials ignore the instructions of a treating physician they exhibit "deliberate indifference" to the prisoner's medical needs. In *Napoleon,* 897 at 106–10, the Third Circuit held that deliberate indifference was shown where one prison doctor ignored the instructions of the prisoner's prior prison physician that a chronic ear infection required treatment with valisone and not water-based medications. In *Martinez v. Mancusi,* 443 F.2d at

924, the Second Circuit held that the prisoner's allegation that guards forced him to walk after leg surgery in violation of the surgeon's orders was sufficient to state a cause of action under § 1983. In *Campbell v. Beto,* 460 F.2d 765 (5th Cir.1972), moreover, the court held that an allegation that the prisoner was assigned to a work detail more strenuous than his medical classification admitted was sufficient to state a cause of action under § 1983.

trict court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED AS TO DEFENDANT DOE.**