**George LUGO, Plaintiff,**

v.

**Daniel SENKOWSKI, Superintendent of Clinton Correctional Facility; Dr. Lee, Medical Director of Clinton Correctional Facilty; Patrick Edwards, Parole Officer, Defendants.**

No. 99–CV–1213 (LEK)(RWS).

United States District Court,
N.D. New York.

Sept. 25, 2000.

George Lugo, Marcy, NY, pro se.

Victoria Hunter Hay, Office of Atty. General, New York City, for Defendants.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff filed the instant Complaint on August 5, 1999 pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights. Plaintiff alleges that Defendants were de-

liberately indifferent to his serious medical needs. Specifically, Plaintiff alleges that he was denied timely and adequate treatment for a kidney stone while incarcerated at Clinton and Coxsackie Correctional Facilities. Plaintiff further contends that he was wrongfully paroled while he was awaiting surgery. Finally, Plaintiff alleges that he was denied contact with his doctor while out on parole by defendant Edwards, his parole officer.

Defendants filed the pending motion to dismiss on December 30, 1999 arguing that Plaintiff has failed to state a claim upon which relief may be granted.

## II. ANALYSIS

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) must be denied "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing the sufficiency, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988).

> [C]onsideration is limited to the factual allegations in [the] complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in Plaintiffs' possession or of which Plaintiffs had knowledge and relied on in bringing suit.

*Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

■ The Rules do not require the plaintiff to set out in detail the facts upon which the claim is based, but only that a defendant be given "fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, are insufficient to state a claim. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

■ Where a motion to dismiss is made prior to any discovery or the filing of an answer, the court is loath to dismiss the complaint, regardless of whether the plaintiff is unlikely to prevail, unless the defendant can demonstrate that plaintiff is unable to prove facts which would entitle him to relief. *See Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 22 (2d Cir.1982); *Egelston v. State Univ. College,* 535 F.2d 752, 754 (2d Cir.1976). "This caution against dismissal applies with even greater force where the complaint is pro se, or where the plaintiff complains of a civil rights violation." *Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir.1991) (citations omitted).

### A. Statute of Limitations

■ Defendants claim that most of Plaintiff's claims are barred by the statute of limitations. Claims brought in federal court under § 1983 have a statute of limitations of three years. *See Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995) (citing *Owens v. Okure,* 488 U.S. 235, 250–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Plaintiff's Complaint was filed on August 5, 1999.

Plaintiff, although claiming that August 2, 1996 should be considered the appropriate cutoff date for his claims, acknowledges in his papers that only two of his claims survive the statute of limitations: (1) his claim that defendants Senkowski and Lee were deliberately indifferent to his serious medical need when they allowed him to be released on parole and (2) his claim that defendant Edwards was deliberately indifferent to his serious medical need when he allegedly prevented him

from returning to his treating hospital for follow up surgery. Accordingly, Plaintiff's remaining claims are dismissed as time-barred.

## B.   Failure to State a Claim

■   In order to establish an Eighth Amendment claim arising out of inadequate medical care, as made applicable to states by the Fourteenth Amendment, a prisoner must prove "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This standard includes both subjective and objective components. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citations omitted). Second, subjectively, the defendant "must act with a sufficiently culpable state of mind." *Id.* An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

■   Although not addressed by the parties, an initial question raised by Plaintiff's complaint, is whether Plaintiff, as a parolee, is entitled to the protections of the Eighth Amendment. The government's obligation to provide medical services to incarcerated individuals established in *Estelle* is an exception to the general rule that the Due Process Clause does not generally place affirmative duties on the state. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney,* the Court addressed the state's duty to a child who had notified state officials of his father's abuse. In rejecting the child's argument that an affirmative duty to protect existed, the Court examined and explained the *Estelle* holding:

[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*Id.* at 199–200, 109 S.Ct. 998 (citations omitted). Accordingly, it may be argued that because a parolee, although subject to the terms of his parole agreement, does not suffer sufficient limitation on his freedom to "act on his own behalf," the government should not have an affirmative duty to assume responsibility for his safety.

In *Wakefield v. Thompson,* 177 F.3d 1160 (9th Cir.1999), the Ninth Circuit addressed this issue in holding that a parolee requiring medication beyond his release was owed an affirmative duty by the state. The court held that "a prisoner's ability to secure medication 'on his own behalf' is not restored the instant he walks through the prison gates and into the civilian world." *Id.* at 1164. The court reasoned that, because it could take parolees a number of days or even weeks to obtain new medication, "the period of time during which prisoners are unable to secure medication 'on their own behalf' may extend beyond the period of actual incarceration." *Id.* Accordingly, the court held that the state was required to provide him with enough

medication to cover the period of time "reasonably necessary to permit him to consult a doctor and obtain a new supply." *Id.*

■ The Court finds the Ninth Circuit's reasoning in *Wakefield* persuasive and holds that it applies to these circumstances as well. The relevant facts alleged by Plaintiff in this action resemble those of the plaintiff in *Wakefield.* Here, Plaintiff alleges that he had surgery to remove his kidney stones shortly before his release on parole from Clinton Correctional Facility ("Clinton") and was told by his treating physician that follow up surgery within several weeks was needed to remove a metal stent from his kidney. Plaintiff was released on parole several weeks thereafter with the stent still inside his body. In other words, Plaintiff was released in the midst of an ongoing surgical process, at approximately the time that the second leg of the procedure was to be completed. Only five days into his parole, Plaintiff was admitted into Bellevue Hospital in Manhattan with severe pain. Defendants allegedly provided Plaintiff no assistance in obtaining the medical treatment he needed. Moreover, Plaintiff alleges that defendant Edwards prevented him from returning to Albany to have the follow up surgery performed by his treating physician. Just as in *Wakefield,* Plaintiff was undergoing continuing treatment at the time he was released, was in need of medical aid in the period immediately following that release and was denied that aid.

■ The State has a duty to provide medical services for an outgoing prisoner who is receiving continuing treatment at the time of his release for the period of time reasonably necessary for him to obtain treatment "on his own behalf." *See Wakefield,* 177 F.3d at 1164. A parolee just having been released after a stay in prison is often in no position to immediately find the alternative medical attention that he needs. The facts as alleged by Plaintiff here support a claim that he was unable to obtain the necessary treatment "on his own behalf" and that the state had a continuing duty to protect him for a reasonable amount of time. This is particularly true here because the medical procedure needed by Plaintiff involved the completion of a course of treatment started while the plaintiff was incarcerated. Under the circumstances alleged in this case, where Defendants were aware that Plaintiff needed additional medical attention almost immediately upon his departure, this duty could have entailed allowing Defendant to return to Albany for treatment or forwarding his medical records to a facility in New York to facilitate the performance of the operation there. Taking the facts as alleged by Plaintiff as true, he was owed a limited duty of protection beyond his period of incarceration which was not satisfied by the state.

### 1. Deliberate Indifference

Although this Court holds that a duty to protect Plaintiff exists under these circumstances, Plaintiff still must establish that both prongs of the *Farmer* analysis have been satisfied. While it is well settled law that "mere negligence in giving or failing to supply medical treatment alone" does not constitute a violation of the Eighth Amendment, *Church v. Hegstrom,* 416 F.2d 449, 450–51 (2d Cir.1969), the Second Circuit has held that when officials ignore the instructions of a treating physician, they exhibit "deliberate indifference to the prisoner's needs," *see Martinez v. Mancusi,* 443 F.2d 921, 924 (2d Cir.1970); *see also Wakefield,* 177 F.3d at 1165; *White v. Napoleon,* 897 F.2d 103, 106–10 (3d Cir. 1990).

In *Martinez,* the plaintiff alleged that after surgery on his right leg, his doctors directed that he should lie flat on his back and move his legs as little as possible in order for the operation to be successful. However, he was removed from the hospital and transferred back to the prison on foot. The court held that, as alleged, these actions constituted more than "mere negligence" and that, if proven, they would

constitute a "deliberate indifference to, and defiance of, explicit medical instructions" in violation of the Eighth Amendment. *Martinez*, 443 F.2d at 925.

■ Here, Plaintiff alleges that Defendants, in deliberate indifference to his treating physician's instructions that follow up surgery be performed within several weeks, released him from the prison without arranging for such surgery to be performed. Instead, it is alleged that they sent him back into the world in immediate need of surgery to remove a foreign object that his treating physician while incarcerated had placed there without so much as facilitating a surgery in an alternative hospital and then proceeded to prevent him from traveling to his treating physician for the surgery. We hold that Plaintiff has alleged facts which, if proven, are sufficient to support a claim that Defendants' actions constituted deliberate indifference to Plaintiff's medical needs.

### 2. Serious Medical Needs

Plaintiff must also establish that he suffered from a "serious medical need." Plaintiff's complaint clearly alleges facts that could support a claim that he had serious medical needs. He was under doctor's orders to undergo needed follow up surgery to have a stent removed, a procedure which were eventually performed at Bellevue Hospital in Manhattan. Moreover, he alleges that he was admitted to Bellevue with "extreme pain." The Court holds that Plaintiff has alleged facts sufficient to support a claim that he was suffering from a "serious medical need."

Accordingly, the Court holds that the facts as alleged are sufficient to constitute a violation of Plaintiff's constitutional rights and thus to state a claim under Section 1983.

### C. Qualified Immunity

■ Defendants argue that they are entitled to qualified immunity. The affirmative defense of qualified immunity "shields public officials from liability for their discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In the context of a deliberate indifference violation, the *Hathaway* court held that "[e]ven where, as here, a plaintiff's rights are well-established, qualified immunity is still available to an official if it was 'objectively reasonable for the public official to believe that his acts did not violate those rights.'" *Hathaway*, 37 F.3d at 67 (quoting *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991).

The facts as alleged in this case suggest that Defendants ignored the fact that Plaintiff was in need of immediate surgery to remove a foreign object from his body and, despite their control over the circumstances, did nothing to facilitate such a surgery and, in fact, hindered its timely completion. If these facts are proven, it cannot be argued that it was objectively reasonable for Defendants to believe that their conduct did not violate Plaintiff's rights.

### D. Exhaustion of Administrative Remedies

Defendants argue that, pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), Plaintiff's claims against defendants Senkowski and Lee must be dismissed due to Plaintiff's failure to exhaust his administrative remedies. This argument, however, is now moot, as Plaintiff has since filed a grievance and received a final, unappealable determination.

### E. Compliance with Local Rules

■ Finally, Defendants argue that Plaintiff's reply papers should not be considered by the Court because they do not contain either a memorandum of law or a supporting affidavit. Defendants argue that it is unclear whether Plaintiff's An-

swer in Opposition to Defendant's Motion to Dismiss is a memorandum of law or an affidavit in support. It appears to the Court that it is actually both documents in one. In any event, any such violation by Plaintiff amounts to a mere technicality which, in this Court's discretion, does not prevent the consideration of the papers submitted.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Defendants' motion to dismiss is DENIED in part and GRANTED in part; and it is

FURTHER ORDERED that those portions of Plaintiff's claim pertaining to actions that took place prior to August 1996 are hereby DISMISSED; and it is

FURTHER ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.