Alonzo JACOBS, Plaintiff–Appellant,

v.

H. RAMIREZ, Parole Officer, R. Mroczeck, Parole Counselor, Santiago, Senior Parole Officer, E. Fisher, Assist. Senior Parole Officer, etc., al., Defendants–Appellees.

Docket No. 04–3820.

United States Court of Appeals, Second Circuit.

Argued: Feb. 16, 2005.

Decided: March 1, 2005.

Alonzo Jacobs, pro se, Bronx, NY, plaintiff-appellant.

No appearance for defendants-appellees.

Before: OAKES, KEARSE, and SACK, Circuit Judges.

PER CURIAM.

*Pro se* plaintiff Alonzo Jacobs, a parolee under the supervision of the New York State Division of Parole, appeals from the district court's *sua sponte* dismissal of his complaint pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) for failure to state a claim on which relief may be granted. The complaint, which seeks monetary damages pursuant to 42 U.S.C. § 1983, alleges that the defendant parole officers violated Jacobs's civil rights by paroling him to his mother's unsafe and unsanitary residence, refusing his request to relocate to a homeless shelter, refusing to assist him in obtaining employment through the Division of Parole Job Placement/Referral Program, and coercing him to sign a sex offender registration form upon his release from prison even though Jacobs was not convicted of a sex offense. The district

court concluded that Jacobs did not allege a violation of any right protected by the United States Constitution or by federal law inasmuch as there is no constitutional right to parole, the requirement for sex offenders to register has been upheld as constitutional, and the failure of a state official to comply with a state job placement program for parolees does not rise to the level of a violation of a federal right.

■ This court reviews *de novo* the district court's dismissal of a complaint for failure to state a claim, taking all the allegations in the complaint as true and drawing all inferences in the plaintiff's favor. *See Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir.2004). "The settled rule is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir.2004) (internal quotation marks omitted)). "Further, when the plaintiff proceeds *pro se*, as in this case, a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *Id.* at 113 (quoting *McEachin*, 357 F.3d at 200 (internal quotation marks omitted)).

Applying this forgiving standard, we cannot say that Jacobs has failed to state a claim that his placement in an allegedly uninhabitable home violated the state's affirmative duty to "assume *some* responsibility for his safety and general well-being" while he remained under its supervision and subject to the restrictions of parole. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (emphasis added). "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time

fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the . . . Due Process Clause." *Id.*

*DeShaney* itself rejected the notion of a state-created duty in the context of that case because the plaintiff had been released from the state's physical custody. *See id.* at 201, 109 S.Ct. 998 ("[T]he State does not become the permanent guarantor of an individual's safety by having once offered him shelter."). Other courts have suggested, however, that the state does maintain some, if very limited, duties in the context of a prisoner's release from custody. *See, e.g., Lugo v. Senkowski*, 114 F.Supp.2d 111, 115 (N.D.N.Y.2000) ("The State has a duty to provide medical services for an outgoing prisoner who is receiving continuing treatment at the time of his release for the period of time reasonably necessary for him to obtain treatment 'on his own behalf.'") (quoting *Wakefield v. Thompson*, 177 F.3d 1160, 1164 (9th Cir.1999)). *But see Bright v. Westmoreland County*, 380 F.3d 729, 736–37 (3d Cir.2004) (rejecting a Section 1983 claim by the father of a murder victim that the state "should have taken the affirmative step of arresting and/or incarcerating [the murderer] for an alleged probation violation" before the murder, because the state has no "continuing duty" to prevent a parolee "from ever committing any other crime").

■ A parolee, although not in the state's physical custody, is nonetheless in its legal custody, and his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("Though the State properly subjects [a parolee] to many restrictions not applicable to other citizens,

his condition is very different from that of confinement in a prison."). Accordingly, because the limitations imposed by the state are minimal, so too are the duties it assumes. *See DeShaney,* 489 U.S. at 200, 109 S.Ct. 998 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."). In this case, for example, Jacobs himself chose his mother's home as the residence to which he was to be paroled, and the evidence may well show that his liberty was not so curtailed by the conditions of his parole that he could not himself undertake to repair the defects of which he complains. At the same time, because Jacobs alleges that the state effectively *compelled* him to live in unsafe conditions, we cannot conclude "beyond doubt" that he "can prove no set of facts" that would entitle him to relief. *Cf. Wood v. Ostrander,* 879 F.2d 583, 589–90 (9th Cir.1989) (concluding that plaintiff "raised a triable issue of fact as to whether [a police officer's] conduct affirmatively placed the plaintiff in a position of danger" when he arrested the driver of the car in which she was a passenger, impounded the car, and "apparently stranded [the plaintiff] in a high-crime area at 2:30 a.m." (citation and internal quotation marks omitted)); *Edwards v. Johnston County Health Dep't,* 885 F.2d 1215, 1219 (4th Cir.1989) (noting, in rejecting a claim by migrant farmworkers that state and county officials had violated their civil rights by issuing permits for the establishment of substandard housing facilities, that the officials "never assumed custody of them, ... [or] *place[d] them in those substandard housing facilities*" (emphasis added)). Having agreed to parole Jacobs to the home to which he sought to be paroled, the state assumed the very limited duty of ensuring that it did not *require* him to remain in a place that turned out, at least according to his allegations, to be uninhabitable.

Because we think that Jacobs has stated a claim under Section 1983 with respect to the state's decision to parole him to allegedly unsuitable housing and its alleged refusal to allow him to move, we reverse the district court's dismissal of that portion of his complaint and remand this case for further proceedings with respect thereto.

We note with respect to Jacobs' claim that he was required to register as a sex offender that Jacobs does not claim that he was actually listed as a sex offender pursuant to New York's Sex Offender Registration Act, N.Y. Corrections Law §§ 168–168v. Indeed, he suggests otherwise, alleging in his complaint that the "sex unit officer" who reviewed his criminal record informed him that "the sex offender laws didn't appl[y] to [him]." Because Jacobs appears to allege that he was not actually placed on the sex offender registry, he has not stated a claim in this regard. The district court may, however, wish to permit Jacobs to file an amended complaint in the event he has some grievance as to other restrictions placed on him in connection with his alleged classification as a sex offender by the Probation Division.

We have considered Jacobs' other claims and we find them to be without merit for substantially the reasons stated by the district court.

## CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.