# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERRIS EDGERLY,
         *Plaintiff-Appellant,*

    v.

CITY AND COUNTY OF SAN
FRANCISCO; DAVID GOFF; JOHN
CONEFREY; FREDERICK SCHIFF,
         *Defendants-Appellees.*

No. 05-15080

D.C. No.
CV-03-02169-WHA

---

ERRIS EDGERLY,
         *Plaintiff-Appellant,*

    v.

CITY AND COUNTY OF SAN
FRANCISCO; DAVID GOFF; JOHN
CONEFREY; FREDERICK SCHIFF,
         *Defendants-Appellees.*

No. 05-15382

D.C. No.
CV-03-02169-WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, Distict Judge, Presiding

Argued and Submitted
November 13, 2006—San Francisco, California

Filed July 17, 2007

Before: William C. Canby, Jr., John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

8613

**COUNSEL**

Gregory M. Haynes, San Francisco, California, for plaintiff-appellant Erris Edgerly.

Dennis J. Herrera, City Attorney, Joanne Hoeper, Chief Trial Attorney, Sean F. Connolly, Deputy City Attorney, San Francisco City Attorney's Office, San Francisco, California, for defendants-appellees City and County of San Francisco, John Conefrey, and David Goff.

Jeremy Sugerman, Daniel J. O'Rielly, Gordon-Creed, Kelley, Holl & Sugerman, LLP, San Francisco, California, for defendant-appellee Frederick Schiff.

## OPINION

PAEZ, Circuit Judge:

San Francisco Police Department Officers David Goff and John Conefrey ("Officers") arrested Erris Edgerly for trespassing within the gated area of the Martin Luther King/Marcus Garvey Housing Cooperative ("Cooperative"). The Officers transported Edgerly to the local police station, where they searched him for contraband. The search did not reveal any contraband and Sergeant Frederick Schiff, the police supervisor on duty at the time, authorized the Officers to issue Edgerly a citation for trespass and release him. Edgerly was not prosecuted for trespass or any other offense. Edgerly then filed this § 1983 action against the Officers, Schiff, and the City and County of San Francisco ("City"), alleging that the Officers unlawfully arrested and searched him in violation of the Fourth Amendment, and that Schiff and the City were liable for the Officers' unconstitutional actions. He also asserted various state tort claims against the Officers, Schiff, and the City.

In ruling on the parties' motions for summary judgment,[1] the district court dismissed Edgerly's § 1983 claims against the City and all claims against Schiff, but found that there were genuine issues of material fact with regard to Edgerly's constitutional and state law claims against the Officers and

---

[1]The Officers and City filed joint motions for summary judgment and, later at trial, for judgment as a matter of law. Schiff filed separate motions. Edgerly filed a motion for partial summary judgment and requested partial judgment as a matter of law on his arrest claims.

state law claims against the City, and therefore allowed those claims to proceed to trial.

Following the presentation of all evidence, the district court granted the defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) and dismissed Edgerly's remaining claims. The court also awarded attorneys' fees to Schiff under 42 U.S.C. § 1988 and imposed sanctions against Edgerly and his attorney, Gregory Haynes, under Federal Rule of Civil Procedure 11(b). We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse in part, affirm in part, and remand for further proceedings.

On Edgerly's arrest claims, we hold as a matter of law that the Officers did not have probable cause to arrest Edgerly for trespass in violation of then-section 602(*l*), now section 602(m), of the California Penal Code, or any other criminal statute identified by the Officers and City. We also hold that the Officers are not entitled to qualified immunity for the arrest. Accordingly, Edgerly is entitled to judgment as a matter of law on the arrest claims and we reverse and remand for a determination of damages.

On Edgerly's search claims, we hold that, viewing the evidence in the light most favorable to Edgerly, a reasonable jury could find that the Officers subjected him to an unreasonable search in violation of the Fourth Amendment. We also hold that the Officers are not entitled to qualified immunity for the search. Consequently, we reverse and remand Edgerly's search claims for further proceedings.

Finally, as to Edgerly's other claims, we reverse (1) the Rule 50(a) ruling dismissing his additional state law claims against the Officers and the City, and (2) the grant of summary judgment dismissing his § 1983 *Monell*[2] claims against the City. We affirm, however, (1) the grant of summary judg-

---

[2]*Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

ment to Schiff, (2) the award of attorneys' fees to Schiff under 42 U.S.C. § 1988, and (3) the award of sanctions against Edgerly and his counsel.

## I.    Background

In reviewing the district court's summary judgment ruling, we consider only the evidence submitted in connection with the parties' motions, which consisted primarily of their pretrial depositions. Conversely, in reviewing the district court's Rule 50(a) ruling, we consider only the evidence presented at trial. However, other than one discrepancy in Edgerly's testimony that is not relevant to our disposition,[3] there were no significant differences between the parties' depositions and trial testimony. Therefore, we do not expressly distinguish between the two in our description of the facts.

The material evidence regarding Edgerly's arrest is not in dispute. On August 29, 2000, while on daytime patrol, Officers Goff and Conefrey drove by the Cooperative and observed Edgerly standing inside the fence that surrounds the property, next to a playground area. "No trespassing" signs were posted at the Cooperative's gated entrances. The Officers continued on their patrol and returned about five minutes later to find Edgerly standing at the same location. According to the Officers, they knew that Edgerly did not live at the Cooperative and that he had previously been arrested for a drug offense at a nearby street corner.[4]

---

[3]At his deposition, Edgerly testified that he told the Officers before the arrest that he was at the Cooperative "waiting for a resident." At trial, however, he did not testify that he told the Officers why he was at the Cooperative. In granting judgment as a matter of law for the Officers, the district court mistakenly concluded that the absence of this testimony was critical. As we explain below, the Officers lacked probable cause whether or not Edgerly told them that he was waiting for a resident.

[4]The Officers also testified that the cooperative was in a high-crime area known for drug dealing and that Edgerly was an "associate" of neighbor-

The Officers stopped their car, approached Edgerly, and asked him "what he was doing." According to the Officers, Edgerly responded that he was "just chilling," which meant "just hanging out for no reason."[5] Having "determin[ed] that he had no specific reason to be [at the Cooperative]," the Officers arrested Edgerly for trespassing in violation of California Penal Code section 602(*l*). The Officers testified that Edgerly was trespassing because he was loitering on the property and the Cooperative's management had requested that officers enforce the "no trespassing" signs.

After the arrest, the Officers conducted a pat-down search of Edgerly and transported him to the Park Police Station, where they performed an additional search. There is conflicting evidence regarding the station search. Edgerly testified that Officer Goff asked him to remove his shoes and socks, pull his pants down to his ankles, and bend over and cough. He also testified that Goff looked inside his boxer shorts before telling him that he could get dressed. The Officers, however, testified that Goff conducted only a routine clothing search. In any event, the search did not reveal any contraband. Sergeant Schiff was the supervisor on duty at the police station at the time, but he was not aware of the arrest or search until after they were completed, at which time he authorized the Officers to cite and release Edgerly. Edgerly was never prosecuted for any offense.

---

hood gang members. Edgerly testified that he lived one block away from the Cooperative and regularly visited his friends who lived there. He also testified that he rang the doorbell to a friend's home shortly before his arrest and that he was waiting for her to return home when he was arrested.

[5] Edgerly's trial testimony was slightly different. He testified that the Officers asked him whether he lived at the Cooperative and that he said "no." We agree with the district court that this minor difference is not relevant to the probable cause analysis. Crediting either version of events, Edgerly did not provide the Officers with a specific explanation for his presence, but neither did he refuse to offer an explanation or suggest that he was on the premises for an unlawful purpose.

Edgerly filed a complaint against the Officers, Schiff, and the City in the Superior Court of California, seeking damages under § 1983 for violations of his Fourth Amendment rights. Edgerly also alleged state law claims for negligence, negligent and intentional infliction of emotional distress, false arrest, and unlawful search. The City properly removed the case to federal court. After the parties completed discovery, the district court granted summary judgment to the City on Edgerly's § 1983 *Monell* claims and to Schiff on all claims against him. The court found, however, that there were genuine issues of material fact with regard to Edgerly's § 1983 and state law claims against the Officers and state law claims against the City, and therefore denied summary judgment on those claims.

At trial, at the close of all the evidence, the district court granted the Officers and City's motion for judgment as a matter of law "for the reasons stated on the record and memorandum submitted by [the Officers and City]."[6] The court ruled that, as a matter of law, the Officers had probable cause to arrest Edgerly, if not under section 602(*l*), then under another state trespassing or loitering statute. As the court explained at the Rule 50 hearing:

> On this record and these circumstances no jury could find otherwise than these officers had probable cause to believe a crime of some sort had been committed. That's true even if it wasn't 602(*l*). It didn't have to be 602(*l*). In addition, I want to say that counsel should have brought to my attention California Penal Code 602.8. . . . But I want to say that I'm not limiting my analysis to 602.8. I am adopting each and

---

[6]Although Edgerly did not file a separate Rule 50(a) motion, he requested that the court rule as a matter of law that the Officers lacked probable cause to arrest him, in his "Response to Defendants' Request for Curative Instructions and Plaintiff's Request for order of No probable cause for 602(L) trespass arrest."

every other provision that the City Attorney's Office has suggested . . . .[7]

The court also held that the Officers' search of Edgerly at the police station was not a strip search and was reasonable under the Fourth Amendment. In the alternative, the court held that, under federal and state law, the Officers were entitled to immunity from all of Edgerly's claims.

After entry of judgment, the district court granted Schiff's motion for attorneys' fees, because Edgerly failed to dismiss Schiff after discovery revealed that the claims against him lacked merit. The court also granted Schiff's motion for sanctions against Edgerly and his attorney, finding that they filed two frivolous motions for reconsideration of the court's summary judgment ruling.

## II.   Discussion

### A.   Officers Goff and Conefrey

We review de novo the district court's order granting the Officers and City's motion for judgment as a matter of law under Rule 50(a). *See Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002). "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Id.*

#### 1.   Section 1983 Unlawful Arrest Claim

##### a.   Probable Cause to Arrest

Edgerly argues that the Officers arrested him without probable cause, in violation of the Fourth Amendment. To deter-

---

[7]As we discuss below, the Officers and City suggested that probable cause also existed to arrest Edgerly under California Penal Code sections 602.5 and 647(h).

mine whether the Officers had probable cause at the time of the arrest, we consider "whether at that moment the facts and circumstances within [the Officers'] knowledge . . . were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Although conclusive evidence of guilt is not necessary to establish probable cause, "mere suspicion, common rumor, or even strong reason to suspect are not enough." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (alteration omitted). Generally, officers need not have probable cause for every element of the offense, but they must have probable cause for specific intent when it is a required element. *Id.* at 1072-73.

[1] Also, shortly before the district court entered judgment for the Officers and City under Rule 50(a), the Supreme Court decided *Devenpeck v. Alford*, 543 U.S. 146 (2004), reversing our decision in *Alford v. Haner*, 333 F.3d 972 (9th Cir. 2003), and overturning our precedent holding that probable cause supports an arrest only if probable cause existed for the offense invoked by the arresting officers or a closely related offense. *See Devenpeck*, 543 U.S. at 153-55. The Court held that, because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest. *See id.* Under *Devenpeck*, however, an arrest is still unlawful unless probable cause existed under a specific criminal statute. *See id.* at 156 (remanding for the Ninth Circuit to address whether probable cause existed to arrest respondent for "obstructing a law-enforcement officer or for impersonating a law-enforcement officer"); *see also Alford v. Haner*, 446 F.3d 935, 937 (9th Cir. 2006) (holding, on remand from *Devenpeck*, that probable cause existed because there was "sufficient evidence in the record to support a finding of objective probable cause to arrest Alford for the misdemeanor offense of criminal impersonation in the second degree"). It is therefore not enough, as the Officers and City argue, that probable

cause existed to arrest Edgerly for some metaphysical criminal offense;[8] they must ultimately point to a particular statutory offense.

[2] We conclude that the Officers did not have probable cause to arrest Edgerly for any offense identified by the Officers and City. The Officers cited Edgerly for violating California Penal Code section 602(*l*), now section 602(m). Under this section, a person commits a trespass if he or she "willfully . . . [e]nter[s] and occup[ies] real property or structures of any kind without the consent of the owner." Long before Edgerly's arrest, however, the California Supreme Court had clearly established that section 602(*l*) "requires occupation of the property, a 'nontransient, continuous type of possession.' " *In re Catalano,* 623 P.2d 228, 234 n.8 (Cal. 1981) (quoting *People v. Wilkinson*, 56 Cal. Rptr. 261, 264 (Cal. App. Dep't Super. Ct. 1967)). As *Wilkinson* explained, section 602(*l*) requires the specific "inten[t] to remain permanently, or until ousted." 56 Cal. Rptr. at 262; *see also* Cal. Jury Instr., Crim., No. 16.340 (6th ed. 1996) (requiring, for a conviction under section 602(*l*), proof that the defendant "entered and occupied the property with the specific intent to dispossess those lawfully entitled to possession").

[3] Here, the Officers knew only that Edgerly was not a resident of the Cooperative and that he had been on the property for a matter of minutes. On the basis of these facts, a reasonable officer would not have believed that Edgerly had violated or was about to violate section 602(*l*).

[4] Nor did probable cause exist to arrest Edgerly for any of the other criminal offenses suggested by the Officers and

---

[8]In their brief on appeal, the Officers and City do not argue with specificity that probable cause existed to arrest Edgerly under a trespassing or loitering statute; indeed, they do not even mention any relevant statutes. They argue only that the Officers "had probable cause to arrest Edgerly for *some* type of trespass."

City to the district court. First, under California Penal Code section 647(h), loitering also has a specific intent requirement, for which the Officers clearly had no probable cause.[9] Specifically, that section requires that the alleged loiterer "delay or linger" on the property "for the purpose of committing a crime as opportunity may be discovered."[10] *Id.*; *see also In re Joshua M.*, 110 Cal. Rptr. 2d 662, 664-65 (Cal. Ct. App. 2001) (noting that the California courts first added this "specific intent element" to the state's loitering statute in 1961, and that "[t]he Legislature included this intent element when it redrafted [the loitering statute] as present section 647, subdivision (h)"); Cal. Jury Instr., Crim., No. 16.445 (6th ed. 1996) (requiring, for a conviction under section 647(h), proof that the defendant "had a specific intent to commit a crime if [he or she] discovered the opportunity to do so").

Second, the 2000 version of California Penal Code section 602.5 in effect at the time of Edgerly's arrest, which prohibited "enter[ing] or remain[ing] in any noncommercial dwelling house, apartment, or other such place,"[11] applied by its terms only to "structures of the most private character, i.e., places of habitation." *In re D.C.L.*, 147 Cal. Rptr. 54, 55 (Cal. App. 1978) (holding that unauthorized entry of a shed adja-

---

[9]California Penal Code section 647(h) provides, in full: "[Everyone who] loiters, prowls, or wanders upon the private property of another, at any time, without visible or lawful business with the owner or occupant [is guilty of disorderly conduct, a misdemeanor]. As used in this subdivision, 'loiter' means to delay or linger without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered."

[10]Although we recognize that the probable cause and qualified immunity standards are objective, *see Lopez*, 482 F.3d at 1072; *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 950 (9th Cir. 2003), we note that the Officers and City do not argue, and the Officers did not testify, that the Officers had probable cause to believe that Edgerly was on the Cooperative property for the purpose of committing a crime.

[11]Effective January 1, 2001, California amended section 602.5 to replace "other such place" with "other residential place." 2000 Cal. Stat. ch. 3 (S.B. No. 1486).

cent to a house does not violate the section).[12] A reasonable officer would not have believed that Edgerly, who was standing in the Cooperative's playground area, had entered or was about to enter a dwelling unit in the Cooperative in violation of section 602.5.

Finally, probable cause could not have existed to place Edgerly under custodial arrest pursuant to California Penal Code section 602.8(a). As an initial matter, it is doubtful that the section applies to residential property, as it prohibits entering, without written permission, "lands under cultivation or enclosed by fence . . . [or] uncultivated or unenclosed lands where signs forbidding trespass are displayed at intervals not less than three to a mile."[13] In any event, a first offense under section 602.8(a) is punishable only "as an infraction" and, under clearly established California law, "[i]n all cases . . . in which a person is arrested for an infraction, a peace officer shall only require the arrestee to present . . . satisfactory [proof of identity] and to sign a written promise to appear." Cal. Penal Code § 853.5. "Only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may the arrestee be taken into custody." *Id.*

Here, the Officers did not testify that Edgerly refused to provide identification, fingerprints, or a signed written promise to appear, or that they had reason to believe that he previ-

---

[12] As *In re D.C.L.* also noted, to construe the section otherwise "would be inconsistent with the legislative intent expressed in [section 602(*l*)], in that a penalty could be imposed for an unauthorized entry of any noncommercial structure even though no substantial occupation occurred." *Id.* (footnote omitted).

[13] As the California Court of Appeal explained in *Quarterman v. Kefauver*, citing section 602.8(a), among other statutes: "This sampling of statutes suggests that when the Legislature refers to land as . . . under cultivation . . . the ordinary import of the description usually is to agricultural land . . . , or at least rural land as opposed to urban backyards." 64 Cal. Rptr. 2d 741, 745-46 (Cal. Ct. App. 1997)."

ously violated section 602.8(a). Thus, even if a reasonable officer might have believed that Edgerly had violated section 602.8(a), the Officers lacked probable cause to place Edgerly under custodial arrest on this basis.

[5] In sum, the facts and circumstances within the Officers' knowledge were not sufficient for a reasonable officer to believe that Edgerly had violated or was about to violate any California criminal statute that permitted custodial arrest,[14] and we therefore conclude that the Officers did not have probable cause to arrest Edgerly.[15] *See Beck*, 379 U.S. at 91.

---

[14]The Officers and City do not refer us to any relevant municipal code for which probable cause to arrest may have existed.

[15]In *Blankenhorn v. City of Orange*, we recently held that city police officers had probable cause to arrest Blankenhorn for trespass under California Penal Code sections 602(j) and 602(n), now sections 602(k) and 602(o). *See* 485 F.3d 463, 473-75 (9th Cir. 2007). *Blankenhorn*, however, involved a unique set of facts distinct from those in the instant case, and dealt with two sections of the California Penal Code that clearly do not apply here.

The officers arrested Blankenhorn at a shopping mall where, six months before, mall security had issued him written notice evicting and permanently banning him from the premises. Mall security also asked the officers to arrest Blankenhorn on the night of the arrest. In light of these circumstances, we held that "[r]easonable officers could have thought that Blankenhorn, knowing he had been banned a few months earlier, could have intended that his presence would constitute 'injury to property rights' or 'interference' with [the mall's] business," in violation of then-section 602(j). *Id.* at 473-74 (quoting Cal. Penal Code § 602(j)). Likewise, we held that reasonable officers could have concluded that Blankenhorn violated then-section 602(n), by his " '[r]efus[al] or fail[ure] to leave' after being issued the Notice Forbidding Trespass." *Id.* (quoting Cal. Penal Code § 602(n)) (alterations in original).

In light of these differences, although *Blankenhorn* also involved an arrest for trespass under the California Penal Code, it does not affect our analysis of Edgerly's unlawful arrest claims.

### b.   Qualified Immunity for the Arrest

**[6]** We must also determine, however, whether the Officers are entitled to qualified immunity for the arrest. As the Supreme Court explained in *Saucier v. Katz*, 533 U.S. 194 (2001), police officers are entitled to qualified immunity from § 1983 claims unless (1) their alleged conduct violated a constitutional right, and (2) that right was clearly established. *Id.* at 201-02. In determining whether a right was clearly established, we do not consider the right as a "general proposition." *Id.* at 201. Rather, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

**[7]** Here, the Officers violated Edgerly's constitutional rights under the Fourth Amendment by arresting him without probable cause. The qualified immunity analysis therefore distills down to a single particularized inquiry: whether "a reasonable officer could have believed that probable cause existed [for the] arrest" under the circumstances. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). If so, the arresting officers are entitled to qualified immunity. Conversely, if a "reasonable officer could [not] have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed," then the arresting officers are not entitled to immunity. *Id.* at 227 (final alteration in original).

**[8]** We conclude that the Officers are not entitled to qualified immunity. At the time of the arrest, it was clear under established California law that Edgerly's brief and otherwise unremarkable presence within the Cooperative's gated, outside area did not violate any criminal statute. *See id.* at 227-28.

First, as we explained above with regard to then-section 602(*l*), it was clearly established well before Edgerly's arrest that a person committed a trespass under that section only if

he or she had the specific intent to permanently dispossess the lawful owner of the property. Given Edgerly's unremarkable presence on Cooperative property for a matter of minutes, no reasonable officer could have believed that probable cause existed to arrest Edgerly under section 602(*l*).

Similarly, no reasonable officer could have believed that probable cause existed to arrest Edgerly under section 647(h), in light of its express specific intent requirement. As we explained above, a person violates section 647(h) only if he or she lingers on private property for the purpose of committing a crime. Here, Edgerly was simply standing at the Cooperative's playground area for about five minutes, and the Officers had no additional information that Edgerly specifically intended to commit a crime at that time.

Nor could a reasonable officer have believed that probable cause existed to arrest Edgerly under the applicable version of section 602.5, since none of the facts known to the Officers suggested that Edgerly had entered or was about to enter any of the Cooperative's dwelling units. As we explained above, and the California courts had emphasized prior to Edgerly's arrest, the section applied by its express terms only to actual places of habitation—dwelling houses or apartments—not playground areas.

Finally, even assuming a reasonable officer could have believed that Edgerly had violated section 602.8(a), a reasonable officer could not have believed that probable cause existed to *arrest* Edgerly for the violation. As we explained in *Bingham v. City of Manhattan Beach*, "in evaluating a custodial arrest . . . federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." 341 F.3d at 950 (alteration omitted). Thus, because California law "prohibits arresting someone solely for being an unlicensed driver," we concluded in *Bingham* that "[a]rresting Bingham solely on that basis clearly is not an action that a reasonable officer could have believed lawful."

*Id.* (alteration and internal quotation marks omitted). Here, too, no reasonable officer could have believed that it was lawful to place Edgerly under custodial arrest solely on the basis of section 602.8(a). As we explained above, California law prohibits custodial arrests for a first offense under the circumstances of the instant case.

[9] In sum, we conclude that the Officers lacked probable cause to arrest Edgerly for any offense and, because no reasonable officer could have believed otherwise, that they are not entitled to qualified immunity for the arrest. We therefore reverse and remand for the district court to enter judgment in favor of Edgerly on the issues of probable cause and qualified immunity for the arrest, and for further proceedings on the issue of damages.

2.    Section 1983 Unlawful Search Claim

We also conclude that the district court erroneously entered judgment as a matter of law for the Officers on Edgerly's § 1983 unlawful search claim. Viewing the evidence at trial in the light most favorable to Edgerly, a reasonable jury could find that the Officers' search of Edgerly at the police station was unreasonable, in violation of the Fourth Amendment. Also, because no reasonable officer could have believed, in light of clearly established law, that the search as described by Edgerly was constitutional, the Officers are not entitled to qualified immunity for the search. Because the evidence from trial permits more than one reasonable conclusion as to the constitutionality of the search, we remand for further proceedings.[16]

---

[16]Notably, Edgerly does not argue that the search was unconstitutional because it followed in a "continuous and unbroken sequence" from the unlawful arrest. *Lucero v. Donovan*, 354 F.2d 16, 20 (9th Cir. 1965) ("If the arrest [was] unlawful, then liability could follow, as to [the arresting officer], for the arrest and the events which followed in legally unbroken sequence."); *see also Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (hold-

### a.    Reasonableness of the Search

To determine whether a search is reasonable under the Fourth Amendment, we balance "the need for the particular search against the invasion of personal rights that the search entails." *Way v. County of Ventura*, 445 F.3d 1157, 1160 (9th Cir. 2006). State law is also relevant in analyzing the reasonableness of a search under the Fourth Amendment. *See Reed v. Hoy*, 909 F.2d 324, 330 n.5 (9th Cir. 1989); *see also Bingham*, 341 F.3d at 950.

**[10]** We have held that "arrestees charged with minor offenses may be subjected to a strip search only if jail officials possess a reasonable suspicion that the individual arrestee is carrying or concealing contraband." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991) (citing *Giles v. Ackerman*, 746 F.2d 614 (9th Cir. 1984), *overruled in part on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999)). Similarly, California Penal Code section 4030(f) prohibits strip searches of persons arrested for minor offenses "except those involving, weapons, controlled substances or violence," unless the officer has a "reasonable suspicion based on specific and articulable facts to believe such person is concealing a weapon or contraband."[17]

---

ing that common law tort rules provide the appropriate starting point for assessing § 1983 damages, and that damages for false arrest tort claims "cover the time of detention up until issuance of process or arraignment" (citation omitted)); *United States v. Jenkins*, 876 F.2d 1085, 1089 (2d Cir. 1989) ("[B]ecause Jenkins' arrest . . . was illegal, no valid inventory search could have been based on that arrest."). Because Edgerly did not raise this argument, we deem it waived and therefore do not address it. If the district court deems it appropriate on remand, however, it may allow Edgerly to raise this issue.

[17]We recently held, however, addressing section 4030, that not all drug offenses provide reasonable suspicion for a strip search. *See Way*, 445 F.3d at 1160-62. We have also held that not all felony offenses provide the requisite suspicion. *See Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 711 (9th Cir. 1990), *implied overruling on other grounds recognized by Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993).

**[11]** We have also held that visually inspecting a person's naked body, even without a "visual examination of body cavities," constitutes a strip search.[18] *See Giles*, 746 F.2d at 615, 618. Additionally, California's reasonable definition of a "strip search" informs our Fourth Amendment analysis in the instant case. *See Reed*, 909 F.2d at 330 n.5; *see also Bingham*, 341 F.3d at 950. California Penal Code section 4030(c) expressly defines a strip search as a "search which requires a person to remove or arrange some or all of his or her clothing so as to permit a visual inspection of the underclothing, breasts, buttocks, or genitalia of such person."

**[12]** Viewing the evidence in light most favorable to Edgerly, a reasonable jury could find that the Officers strip searched him. According to Edgerly's trial testimony, Officer Goff required him to arrange his clothing so as to permit a visual inspection of his undergarments, by asking him to pull his pants down to his ankles. Further, Edgerly's testimony that Goff looked inside his boxer shorts permits a reasonable inference that Goff visually inspected his buttocks or genitalia.[19] Therefore, if the jury credits Edgerly's testimony, the Officers' search was a strip search that required reasonable suspicion.

---

[18]Although we have not expressly decided whether requiring an arrestee to expose only his or her undergarments constitutes a strip search, we have held in the border search context that such a search "tend[s] toward [a] strip search in that if conducted in public it can be said to result in embarrassment to one of reasonable sensibilities." *United States v. Palmer*, 575 F.2d 721, 723 (9th Cir. 1978). We further held that, although it is "hardly feasible to enunciate a clear and simple standard for each possible degree of intrusiveness," such a search requires "suspicion . . . founded on facts specifically relating to the person to be searched, and [that] the search [be] no more intrusive than necessary to obtain the truth respecting the suspicious circumstances." *Id.*

[19]In their motion for judgment as a matter of law, the Officers and City conceded that, crediting "Edgerly's version of the search, and, giving a most liberal interpretation of that search, . . . a visual search was conducted of his genitalia."

**[13]** The Officers, however, did not testify that they had reasonable suspicion for the search. Rather, they testified that they arrested Edgerly only for trespass, a minor offense not involving contraband, weapons, or violence. Also, Officer Coneferey testified that Edgerly was not required to lower his pants at the police station because there was no reason to believe that he was concealing a weapon or contraband.

**[14]** Accordingly, a reasonable jury could find that the Officers strip searched Edgerly; and, if the Officers did strip search Edgerly, they violated his Fourth Amendment rights, because they did not have reasonable suspicion for the search.[20]

### b. Qualified Immunity for the Search

Because the facts alleged by Edgerly show that the Officers' conduct violated his constitutional rights, *see Katz*, 533 U.S. at 201, the qualified immunity analysis again turns on a single particularized inquiry: whether a reasonable officer could have believed, in light of clearly established law, that the search was constitutional. *See id.* at 201-02; *see also Way*, 445 F.3d at 1159-60.

**[15]** We conclude that the Officers are not entitled to qualified immunity for their alleged conduct of strip searching Edgerly either by requiring him to reveal his undergarments or by visually inspecting his genitalia or buttocks. As we explained above, it is clearly established in the Ninth Circuit that post-booking strip searches without reasonable suspicion are unconstitutional. *See Fuller*, 950 F.2d at 1446. Moreover, California law expressly defines a strip search to include the

---

[20]In determining the reasonableness of the search under the Fourth Amendment, a jury could also consider the fact that, if the Officers strip searched Edgerly, they violated California law regardless of whether they had reasonable suspicion for the search, because it was not authorized by Sergeant Schiff. *See* Cal. Penal Code § 4030(f) ("No strip search . . . may be conducted without the prior written authorization of the supervising officer on duty.").

exposure of undergarments or visual inspection of buttocks or genitalia, *see* Cal. Penal Code § 4030(c), and provides that it is a criminal offense to knowingly and willfully perform such searches on misdemeanor arrestees such as Edgerly without reasonable suspicion. *See id.* § 4030(f), (n). In light of this clearly established law, no reasonable officer could have believed the police station search, as described by Edgerly at trial, to be lawful. *See Way*, 445 F.3d at 1159-60; *see also Katz*, 533 U.S. at 201-02.

### 3.   State Law Claims

**[16]** Because the analysis for Edgerly's state law false arrest claim is the same as for his § 1983 unlawful arrest claim, we reverse and remand for the district court to enter judgment in favor of Edgerly and to address the issue of damages in further proceedings. *See Gillan v. City of San Marino*, 55 Cal. Rptr. 3d 158, 167-68 (Cal. Ct. App. 2007) (holding that a police officer who unlawfully arrests an individual without probable cause is liable for false arrest, and that California Government Code sections 820.2 and 821.6 do not provide immunity from such claims); *cf.* Cal. Penal Code § 847(b)(1) (providing that officers are entitled to immunity from false arrest claims where they had "reasonable cause to believe the arrest was lawful"); *Blankenhorn*, 485 F.3d at 475 (holding that the arresting officers were entitled to immunity from appellant's state law false arrest claim because the officers had probable cause for the arrest).

Also, although the legal basis for Edgerly's state law unlawful search claim is not entirely clear from his complaint or the district court's orders, it appears to be California Penal Code section 4030(p), which provides a private right of action for persons unlawfully strip searched in violation of the section. If so, Edgerly's state law unlawful search claim would depend on the same disputed factual issues as his § 1983 unlawful search claim, and turn on the jury's resolution of these issues on remand. We therefore reverse and remand for

the district court to clarify the legal basis of this claim and to proceed accordingly.[21]

Edgerly's claims for negligence and negligent and intentional infliction of emotional distress, however, raise substantial legal and factual questions beyond the lawfulness of Edgerly's arrest and search, such as whether Edgerly suffered severe emotional distress and what duties the Officers owed to Edgerly. Because the district court mistakenly concluded that Edgerly's arrest and search were lawful, it did not reach these questions. We therefore remand these claims so that the district court can address the necessary questions in the first instance.

## B.   The City

### 1.   Section 1983 *Monell* Claims

We review de novo the district court's order granting summary judgment to the City for Edgerly's § 1983 claims against it. *See Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Viewing the facts in the light most favorable to the nonmoving party, "we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* We conclude that the district court erred in determining that Edgerly could not maintain his § 1983 *Monell* claims against the City. We therefore reverse the grant of summary judgment to the City on these claims and remand for further proceedings.

---

[21]As we explained above with regard to Edgerly's § 1983 unlawful search claim, the district court may, if it deems it appropriate, allow Edgerly to raise the issue of whether he is entitled to damages for the search simply because it was the result of his unlawful arrest. *See supra* note 16; *cf. Asgari v. City of Los Angeles*, 937 P.2d 273, 281 (Cal. 1997) ("[A] police officer's liability for false arrest does not include damages caused by incarceration following the arrestee's arraignment on formal charges.").

The Supreme Court has held that, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [a constitutional] injury [then] the government as an entity is responsible under section 1983." *Monell*, 436 U.S. at 694. A municipality is liable under *Monell* only if a municipal policy or custom was the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

Here, discovery revealed facts that, taken in the light most favorable to Edgerly, establish municipal liability under *Monell* for the Officers' actions. First, with regard to Edgerly's arrest, Sergeant Schiff testified at his deposition that occupying a property for five to ten minutes would be sufficient to constitute a violation of section 602(*l*). In explaining his basis for this erroneous belief, Schiff testified that his initial training with the City specifically covered section 602(*l*) and that he received periodic updates regarding enforcement of the section. Schiff also testified that:

> We have had upwards of six captains in the eight years that I've been [in the district.] Each [of the captains] has received numerous complaints [from the Cooperative's management and management at two other low income housing projects in the area] about the trespassing, the drug dealing, and requests to abate it, and those requests generally wind up in the lap of Officer[s] Goff and Conefrey.

In his deposition, Officer Goff confirmed that, during his tenure at the station, supervising officers had instructed him about the requirements for enforcing section 602(*l*) at the Cooperative and two other public housing projects in the area. He believed that these instructions applied only at the housing projects. Officer Goff also testified that "this particular problem, . . . outsiders hanging out, selling drugs in these particu-

lar properties," had "been discussed for 17 years with numerous supervisors."

Taking these facts in the light most favorable to Edgerly, a jury could reasonably find that: (1) the City had a policy of training its police officers to make arrests under section 602(*l*) in situations where probable cause did not exist; (2) policy-makers in the police department had implemented a policy of making such unconstitutional arrests at the Cooperative; and (3) these city policies were the moving force behind the Officers' violation of Edgerly's constitutional rights, since police captains and supervisors directed Officers Goff and Conefrey in particular to make such arrests. Thus, the district court erred by dismissing Edgerly's § 1983 *Monell* claim for unlawful arrest.

**[17]** For similar reasons, we conclude that the district court erroneously dismissed Edgerly's § 1983 *Monell* claim premised on the Officers' allegedly unconstitutional search. In his deposition, Schiff testified that he followed "department policy" in requiring officers to request authorization only for full body cavity searches and not for searches that constituted strip searches under California Penal Code section 4030(c). Further, the Officers testified at their depositions that requiring an arrestee to remove his pants to reveal his underclothing does not constitute a strip search or require supervisor approval, and that they had conducted hundreds of such searches. Taking these facts in the light most favorable to Edgerly, a reasonable jury could find that: (1) the City had implemented a policy of permitting unreasonable searches; (2) the Officers were aware of this policy; and (3) the policy was the moving force behind the Officers' violation of Edgerly's constitutional rights.

We therefore reverse the district court's dismissal of Edgerly's § 1983 *Monell* claims against the City, and remand for further proceedings.

### 2.   State Law Claims

**[18]** We also conclude that the district court erred by granting judgment as a matter of law for the City on Edgerly's state law tort claims. First, Edgerly is correct that the City is vicariously liable for the Officers' actions under California law, which "has rejected the *Monell* rule and imposes liability on [cities] under the doctrine of respondeat superior for acts of [city] employees." *See Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) (citing Cal. Gov. Code § 815.2). The City is therefore liable to the same extent as the Officers for Edgerly's state law claims against them, and Edgerly may recover from the City any damages awarded on remand. *See id.*

Second, Edgerly's claim that the City is directly liable for his injuries because it negligently trained and supervised the Officers, raises legal and factual questions that the district court has not yet addressed, such as whether the City owed Edgerly a relevant duty of care. We therefore remand this claim for the district court to address the necessary questions in the first instance.

### C.   Sergeant Schiff

We affirm, however, the district court's grant of summary judgment to Sergeant Schiff as to all claims against him.

We have found supervisorial liability under § 1983 where the supervisor "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). Thus, supervisors "can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of

others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Taking the facts in the light most favorable to Edgerly, Sergeant Schiff was a police supervisor, responsible for the day-to-day operations at the station when he was on duty, who provided only informal training to officers—as Schiff testified at his deposition, when officers asked him questions, he would try to answer them. Schiff also testified, incorrectly, that section 602(*l*) can involve a very brief trespass, and that he had been involved in making such, likely unconstitutional, arrests with other officers. Schiff further testified that, contrary to the requirements of section 4030, he requires officers to request authorization from him only for full body cavity searches, not for strip searches.

These facts, however, do not establish supervisorial liability for Schiff. No reasonable trier of fact could find that Schiff had any personal involvement in the incident, since he was not aware of the arrest or search until after they were completed, when he authorized the Officers to cite and release Edgerly. Nor could a reasonable trier of fact find that a sufficient causal connection existed between Schiff and the Officers' unconstitutional actions. Schiff was not responsible for station policy; he was required to enforce the rules and regulations set forth by his supervising captain and other higher-ranking officers. *Cf. Redman v. County of San Diego*, 942 F.2d 1435, 1446-48 (9th Cir. 1991) (holding, where petitioner alleged that he was sexually assaulted in prison due to a deficient inmate assignment policy, that a reasonable jury could find supervisorial liability based on evidence that the defendant sheriff was responsible for the "ultimate direction of operations at the [prison]"). Nor do the facts suggest that Schiff provided any training to Officers Goff or Conefrey in particular, or that he was responsible for providing formal training to any officers. *See Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (holding that, to establish supervi-

sorial liability for failure to train, a plaintiff must show that the failure "amounted to deliberate indifference").

**[19]** Accordingly, the district court properly dismissed Edgerly's § 1983 claims against Schiff. For similar reasons, the court properly dismissed Edgerly's state law claims against Schiff. Each of these state law claims requires proof of causation and, as discussed, the facts do not establish a sufficient causal connection between Schiff and the Officers' actions. We therefore affirm the district court's grant of summary judgment to Schiff.

### D.    Attorneys' Fees

We review an award of attorneys' fees pursuant to 42 U.S.C. § 1988 for an abuse of discretion. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1160 (9th Cir. 2000). A district court may award attorneys' fees to a prevailing defendant "only where the action brought is found to be unreasonable, frivolous, meritless, or vexatious."[22] *Patton v. County of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988).

Prior to Schiff's deposition on May 4, 2004, his attorney sent three letters to Edgerly's attorney requesting that he dismiss Schiff because the Officers' depositions established that Schiff was not liable for the arrest or search. Edgerly's attorney declined to do so. After the district court ordered summary judgment on October 14, 2004, Schiff's attorney filed a motion for attorneys' fees pursuant to 42 U.S.C. § 1988.

The district court granted Schiff's motion in part, awarding him reasonable attorneys' fees starting from May 11, 2004, when the parties completed discovery. The court found that it was reasonable for Edgerly not to dismiss Schiff before completing discovery, since it was possible that Schiff's deposition would reveal that he had a more significant role in

---

[22]Edgerly does not challenge the amount of the fee award.

training or supervising the Officers than the Officers' depositions had disclosed. The court found, however, that it was unreasonable for Edgerly not to dismiss Schiff after his deposition confirmed that there was no basis for supervisorial liability.

[20] We conclude that the district court did not abuse its discretion in awarding reasonable post-discovery attorneys' fees to Schiff.[23]

### E.   Sanctions

We also review a district court's imposition of sanctions for an abuse of discretion. *Patelco Credit Union v. Sahni*, 262 F.3d 897, 912-13 (9th Cir. 2001). "A district court abuses its discretion in imposing sanctions when it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* at 913. A motion for reconsideration is sanctionable if it is frivolous, but not if it raises new issues. *See Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992).

Here, the district court awarded sanctions against Edgerly and his attorney, Gregory Haynes, under Federal Rule of Civil Procedure 11(b) on the basis of its finding that they filed two frivolous motions for reconsideration.[24] Thus, the court awarded sanctions in the amount of attorneys' fees that Schiff incurred in responding to the motions.

---

[23]Edgerly also argues that the district court abused its discretion because it decided the motion for attorneys' fees without allowing oral argument. Local Rule 7-1(b) for the Northern District of California, however, provides that a district court may decide motions without oral argument, and ,Edgerly does not explain why oral argument was necessary for the court to rule properly on Schiff's motion.

[24]The district court also found in the alternative that the award of sanctions was justified under 28 U.S.C. § 1987. Because we affirm the award of sanctions under Federal Rule of Civil Procedure 11(b), we do not address this alternate basis for the sanctions.

**[21]** We conclude that the district court did not abuse its discretion in imposing these sanctions. The court did not commit any legal error and its finding that Edgerly and Haynes' two motions for reconsideration did not raise any new issues was not clearly erroneous.[25]

### III.    Conclusion

In sum, we conclude that the Officers unlawfully arrested Edgerly without probable cause, and that they are not entitled to qualified immunity for this violation of his Fourth Amendment rights. We therefore reverse and remand for the district court to enter judgment as a matter of law for Edgerly on his § 1983 unlawful arrest claim against the Officers and state law false arrest claims against the Officers and the City, and for further proceedings on the issue of damages.

We further hold that, viewing the evidence in the light most favorable to Edgerly, a reasonable jury could find that the Officers unlawfully strip searched him in violation of the Fourth Amendment and California Penal Code § 4030(f), and that the Officers are not entitled to qualified immunity for the search. We therefore reverse and remand for further proceedings Edgerly's § 1983 unlawful search claim against the Officers and state law unlawful search claims against the Officers and the City.

We also reverse and remand for the district court to address in the first instance Edgerly's state law negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress claims against the Officers and the City, and negligent training and supervision claim against the City. Likewise, we reverse and remand for further proceedings Edgerly's § 1983 *Monell* claims against the City.

---

[25]For the reasons discussed *supra* note 23, the district court did not abuse its discretion in granting the motion without allowing oral argument.

We affirm, however, the district court's dismissal of all claims against Schiff, grant of attorneys' fees to Schiff, and imposition of sanctions against Edgerly and his attorney, Gregory Haynes.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings consistent with this opinion.

In Appeal No. 05-15080, Edgerly shall recover his costs of appeal.

In Appeal No. 05-15382, the Appellees shall recover their costs of appeal.