**Norman HUBBS, Plaintiff**

v.

**COUNTY OF SAN BERNARDINO, CA; Gary Penrod, Sheriff of San Bernardino County, California, Defendants.**

**No. EDCV 06–0292–CBM(RC).**

United States District Court, C.D. California.

Feb. 7, 2008.

Norman Hubbs, Coalinga, CA, pro se.

Teresa M. McGowan, San Bernardino County Counsel Office, San Bernardino, CA, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES

CONSUELO B. MARSHALL, Senior District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the complaint along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) defendants' Rule 12(e) motion for a more definite statement is denied; (3) defendants' motion is granted under Rule 12(b)(6) to dismiss without prejudice Claims 1a, 1c. 1d, 2b and 3 under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); (4) defendant Penrod's motion under Rule 12(b)(6) to dismiss Claim 1i against him in his individual capacity is granted; (5) defendants' motion under Rule 12(b)(6) to dismiss Claims 1e, 1f, 1g, 1h and 2a is denied; and (6) defendants' motion under Rule 12(b)(6) to dismiss Claims 1b, 1i and 1(j) is granted, albeit with leave to amend, and plaintiff shall, if he chooses to pursue these claims, file a Second Amended Complaint amending these claims and raising only these claims and Claims 1e, 1f, 1g, 1h and 2a, or, in the alternative, if he chooses not to pursue these claims, file a document stating he intends to proceed only on Claims 1e, 1f, 1g, 1h and 2a, no later than thirty (30) days from the date of this Order.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order and the Magistrate Judge's Report and Recommendation by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Consuelo B. Marshall, Senior United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

On April 3, 2006, plaintiff Norman Hubbs, a civilly committed sexually violent predator ("SVP"),[1] who is proceeding pro se and in forma pauperis, filed a civil rights complaint under 42 U.S.C. § 1983 against defendants County of San Bernardino and San Bernardino County Sheriff Gary Penrod (collectively "defendants"), claiming numerous violations of his constitutional and statutory rights. On February 23, 2007, Magistrate Judge Rosalyn M. Chapman granted defendants' motion for a

---

1. Pursuant to Fed.R.Evid. 201, this Court takes judicial notice of the records in *Hubbs v. People of the State of California,* case no. EDCV 07–0425–CBM(RC). These records show plaintiff was initially found to be an SVP by a jury on July 1, 2003, and he was committed to Atascadero State Hospital ("ASH") for two years. On March 25, 2005, the State filed a second petition to civilly commit plaintiff as an SVP for the period of July 1, 2005, to July 1, 2007, and on April 13, 2006, a jury found plaintiff to be an SVP, and he was committed to ASH until July 1, 2007. Most recently, on March 27, 2007, the State filed a third petition to civilly commit plaintiff as an SVP, effective July 1, 2007, and that petition is currently pending before the San Bernardino County Superior Court.

more definite statement under Rule 12(e) and dismissed plaintiff's complaint with leave to amend. On July 30, 2007, plaintiff timely filed a verified First Amended Complaint ("FAC") against defendants under Section 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq., claiming violations of his constitutional and statutory rights during the period of June 8, 2005, to June 28, 2005, when plaintiff was in the custody of defendants at the West Valley Detention Center ("WVDC") related to his second SVP commitment hearing. FAC at 1–3.

The First Amended Complaint raises three causes of action. The first cause of action is against defendant Penrod, in his individual and official capacities,[2] and the second and third causes of action are against defendant County.[3] In the first cause of action, plaintiff alleges defendant Penrod is the person responsible for the administration and operation of WVDC, and, as such, he has implemented various customs and practices and failed to adequately train or properly supervise the jail deputies, which caused the constitutional violations plaintiff alleges occurred. FAC at 7–8. The plaintiff further alleges defendant Penrod violated plaintiff's constitutional rights under the Fourth, Sixth, Eighth and Fourteenth Amendments by:

(a) "arresting [p]laintiff and incarcerating him in the WVDC jail facility without a warrant, criminal charge, or probable cause determination for an arrest" in violation of his Fourth and Fourteenth Amendment rights (Claim 1a) (FAC at 4);

(b) "fail[ing] to follow predetermined treatment procedures as to the custody and housing of plaintiff" (Claim 1b) (*id.*);

(c) "permitt[ing] his subordinate deputies to arrest, shackle, transport and book [p]laintiff ... into the [WVDC] ... under the guise of Welfare and Institutions Code ['W.I.C.'] Section 6602 for a 'probable cause' hearing in the San Bernardino County Superior Court[,]" whereas " 'probable cause' only applies in criminal proceedings and there is no probable cause applicable in civil proceedings" (Claim 1c) (FAC at 5);

(d) "having subordinate officers arrest, shackle, strip search, and transport [plaintiff] from [ASH] to the WVDC ... because no criminal conduct or suspicion of such existed and pursuant to [California Department of Mental Health ('DMH') ] Special Order 202 only DMH officers may transport a civil detainee or SVP patient outside a state hospital's grounds" (Claim 1d) (*id.*);

(e) failing to provide plaintiff with prescribed medications as directed by plaintiff's treating physicians at ASH and not allowing plaintiff to have the medications that were sent with him from ASH[4] (Claim 1e) (FAC at 6, 8–9);

(f) forcing "plaintiff to spend three days and nights in a very cold ... 'holding cell' in the 'Male Intake' area of WVDC jail[,] where he was not permitted to have a mattress, hygiene supplies or a bed roll[,]" and where "[t]he holding cell had no bunk or functioning water faucet or drinking

---

**2.** The first cause of action has multiple subclaims, which will be referred to as Claims 1a, 1b, etc.

**3.** The third cause of action is found in the First Amended Complaint's introductory paragraphs.

**4.** Plaintiff alleges that because he was not provided Neurontin for his seizures and Tra-

madol for his pain, he experienced severe pain and suffering, became very sick and listless, it was difficult for him to open his eyes because light hurt them, and he developed a migraine headache that lasted four days, and because he was not provided Hytrin, he had severe urinary problems, could not empty his bladder, and had great difficulty urinating. FAC at 9; Declaration of Norman J. Hubbs ("Hubbs Decl.") at 16.

cup" and "[p]laintiff had to beg for toilet paper" (Claim 1f) (FAC at 6);

(g) designating plaintiff as a protective custody inmate and moving him to Unit 11, where he was provided with "a thin and well worn mattress about 2 inches thick ... that had not been sanitized ...", a blanket which had large holes in it, a stained and torn towel, and a sheet that was extremely stained and mostly yellow and khaki colors whereas it had once been white," and forcing plaintiff "to sleep on the floor in Unit 11 among 10 to 14 other inmates who were held under criminal or penal statutes" and "hous[ing] [plaintiff] among criminals or penal detainees" (Claim 1g) (FAC at 7);

(h) denying plaintiff all hygiene supplies until he was able to purchase his own (Claim 1h) (FAC at 8);

(i) not providing plaintiff, who is a 61–year–old physically disabled person with a mental disorder, with a wheelchair or ambulatory aid, in violation of Title II of the ADA and instead instructing plaintiff "to walk several hundred yards to Unit 11 from the Male Intake area while carrying [a] bedroll" and while being "verbally assaulted" by the escorting deputies (Claim 1i) (FAC at 8–9); and

(j) denying plaintiff his right to court access when "all his requests for access to the jail law library were denied ... by custodial staff who cited a jail policy whereby only criminal defendants acting in propria persona are allowed access to the jail law library" (Claim 1j) (FAC at 9–10).

In the second cause of action against defendant County, plaintiff alleges defendant County approves and promulgates WVDC policies, which do not provide constitutionally adequate conditions of confinement for civil detainees in violation of the Fourth, Sixth, and Fourteenth Amendments (Claim 2a) (FAC at 10). Plaintiff further alleges defendant County violated his constitutional and statutory rights when it transported him from ASH to WVDC using County employees, rather than DMH personnel (Claim 2b) (FAC at 11).

In his third cause of action against defendant County, plaintiff alleges defendant County deprived him of due process of law when it "failed to adhere to the requirement of service of the Petition for Civil Commitment upon him [so that] he could prepare to defend against such petition and have counsel of choice present from the beginning of judicial proceedings and [his] initial court appearance." FAC at 2. For all his claims, plaintiff seeks compensatory and punitive damages and declaratory and injunctive relief.[5] FAC at 12–13.

On August 2, 2007, defendants filed a motion to dismiss the First Amended Complaint, contending it is vague, ambiguous and confusing under Rule 12(e) and

---

5. The plaintiff seeks a declaration that: defendants' "current policy and practice with regard to housing of [SVPs] ... [is] in violation of" California law; WVDC is inadequate to house SVPs; defendants violate ADA by "failing to accommodate civil detainees with mobility impairment, those who require uninterupted [sic] medication therapy, those persons who require mental health treatment [as SVPs], and ... housing civil detainees with criminal arrestees and convicted felons"; and defendant's policies and practices "discriminate[ ] against [SVPs] by failing to treat them as sick persons and to seperate [sic] them from criminal detainees...." Plaintiff also seeks: to enjoining defendant Penrod from housing him in any "facility designed for prisoners which does not afford all conditions and treatment options found in California Penal Code Section 4002 ..."; require special transportation to and from ASH; require defendant County to formulate rules and policies for detaining SVPs; require defendants provide him with "all special accommodations ... prescribed ... by the treatment staff at [ASH] ... while in defendant's [sic] custody"; and require defendants formulate rules for detaining SVPs. FAC at 12–13.

fails to state a claim upon which relief can be granted under Rule 12(b)(6). On August 26, 2007, plaintiff filed an opposition to the motion to dismiss, and defendants did not file a reply.

## DISCUSSION

### I

 Under Rule 12(e), "[i]f a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R.Civ.P. 12(e). However, a motion for a more definite statement must be considered in light of the liberal pleading standards of Rule 8(a). *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1461 (C.D.Cal.1996). Thus, a motion for a more definite statement under Rule 12(e) should be granted only where the complaint is so indefinite that the defendants cannot ascertain the nature of the claims being asserted and "literally cannot frame a responsive pleading." *Id.* at 1461; *Wood v. Apodaca,* 375 F.Supp.2d 942, 949 (N.D.Cal.2005); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial,* § 9:349 (2006 revised) ("A motion for more definite statement attacks unintelligibility in a pleading, not simply mere lack of detail. Thus, the motion fails where the complaint is specific enough to apprise defendant of the substance of the claim being asserted.").

Here, defendants contend the First Amended Complaint is vague and ambiguous because it "is written on paper without numbered lines, making a response to specific paragraph and line numbers impossible" and because "[t]he first three pages of the [FAC,] which contain several facts[,] are not in paragraphs, and are inconsistent with some of the allegations that are contained in marked paragraphs." Motion to Dismiss at 5:9–22. Although that is so, plaintiff's pro se complaint does state its claims, and defendants' motion to dismiss "amply demonstrate[s] that [defendants] do understand the issues presented by the First Amended Complaint." *Bureerong,* 922 F.Supp. at 1462. Accordingly, defendants' motion for a more definite statement under Rule 12(e) should be denied.

### II

 A complaint should be dismissed if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* — U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In considering dismissal, the Court must accept the factual allegations of the complaint as true.[6] *Erickson v. Pardus,* — U.S. ——, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam); *Albright v. Oliver,* 510 U.S. 266, 267, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994). The Court also must construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct.

---

6. "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez,* 942 F.2d 617, 625 n. 1 (9th Cir.1991) (citations and internal punctuation omitted); *Cooper v. Pickett,* 137 F.3d 616, 622–23 (9th Cir.1998). Here, plaintiff's declaration is attached to the complaint, and the Court will consider that declaration to the extent it clarifies the allegations in the First Amended Complaint. However, plaintiff raises several grievances in his declaration not set forth in his First Amended Complaint. Since plaintiff was previously instructed to raise all his claims in his First Amended Complaint, and not in any other document, the Court will not consider those additional complaints.

1843, 1849, 23 L.Ed.2d 404 (1969); *Berg v. Popham*, 412 F.3d 1122, 1125 (9th Cir. 2005). Moreover, pro se pleadings are "to be liberally construed" and are held to a less stringent standard than those drafted by a lawyer. *Erickson*, 127 S.Ct. at 2200; *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam).

## III

The defendants contend *Heck v. Humphrey*, 512 U.S. 477, 481, 114 S.Ct. 2364, 2369, 129 L.Ed.2d 383 (1994), bars plaintiff's claims for wrongful arrest (Claims 1a, 1d and 2b), lack of probable cause (Claim 1c), and failure to timely provide notice of the petition for civil commitment (Claim 3). The defendants are correct.

■ In *Heck*, the Supreme Court held a state prisoner could not bring a suit for damages under Section 1983 that would render his conviction or sentence invalid, and such claims are not cognizable, stating:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.... [W]hen a state prisoner seeks damages in a section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486–87, 114 S.Ct. at 2372; *see also Hubbs v. Alamao*, 360 F.Supp.2d 1073, 1080 (C.D.Cal.2005) ("[A] civil committee ... cannot seek to overturn his civil commitment proceedings in a civil rights action for damages and injunctive relief."). "In evaluating whether claims are barred by *Heck*, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" *Cunningham v. Gates*, 312 F.3d 1148, 1153–54 (9th Cir.2002) (quoting *Heck*, 512 U.S. at 487 n. 6, 114 S.Ct. at 2373 n. 6), *cert. denied*, 538 U.S. 960, 123 S.Ct. 1749, 155 L.Ed.2d 511 (2003).

■ Initially, to the extent plaintiff's claims can be read to challenge the Superior Court's probable cause determinations,[7]

---

**7.** Under California law, "[o]nce the petition [for civil commitment as an SVP] has been filed, it is reviewed by a superior court judge to determine whether it 'states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release.'" *Cooley v. Superior Court (Marentez)*, 29 Cal.4th 228, 244–45, 127 Cal.Rptr.2d 177, 189, 57 P.3d 654 (2002) (quoting W.I.C. § 6601.5). "If the judge determines that the petition, on its face, supports a finding of probable cause, the judge shall order that the person be detained in a secure facility" until a probable cause hearing can be completed. W.I.C. § 6601.5; *Cooley*,

29 Cal.4th at 245, 127 Cal.Rptr.2d at 189, 57 P.3d 654. During the probable cause hearing, the Superior Court must "determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." W.I.C. § 6602(a); *People v. Hurtado*, 28 Cal.4th 1179, 1183, 124 Cal.Rptr.2d 186, 189, 52 P.3d 116 (2002), *cert. denied*, 538 U.S. 963, 123 S.Ct. 1753, 155 L.Ed.2d 516 (2003). If the Superior Court "determines that there is probable cause, the [court] shall order that the person remain in custody in a secure facility until a trial is completed and shall order that a trial be conducted to determine

*Heck* bars those claims since any finding that there was no probable cause to determine plaintiff is an SVP would necessarily imply the invalidity of plaintiff's civil commitment; thus, such claims are not cognizable. W.I.C. § 6602(a); *Huftile v. Miccio–Fonseca,* 410 F.3d 1136, 1141 (9th Cir. 2005), *cert. denied,* 547 U.S. 1166, 126 S.Ct. 2325, 164 L.Ed.2d 844 (2006). Likewise, to the extent plaintiff's claims challenge his wrongful arrest and transportation to WVDC without a warrant, criminal charge or a probable cause determination, such claims necessarily implicate the determination that plaintiff is an SVP and is properly civilly committed, and they also are not cognizable. *See Guerrero v. Gates,* 442 F.3d 697, 703 (9th Cir.2006) ("Wrongful arrest ... could not have occurred unless [plaintiff] were innocent of the crimes for which he was convicted."). Finally, Claim 3 alleges plaintiff was unable to defend against the SVP petition because he received no notice of the civil commitment proceedings against him, and since such a claim necessarily implies the invalidity of his SVP commitment, it also is not cognizable. Accordingly, Claims 1a, 1c, 1d, 2b and 3 should be dismissed without prejudice. *Blueford v. Prunty,* 108 F.3d 251, 255 (9th Cir.1997); *Trimble v. City of Santa Rosa,* 49 F.3d 583, 586 (9th Cir.1995).

## IV

■ All of plaintiff's claims against defendant Penrod are against him in both his individual and official capacities. In his individual capacity, plaintiff alleges both that defendant Penrod is responsible for formulating the official policy or custom governing the operations of WVDC, and defendant Penrod has failed to properly train or supervise his Sheriff's Department personnel, and each of those allegations is

whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his

sufficient to allege defendant Penrod's individual liability as a supervisor. *Edgerly v. City and County of San Francisco,* 495 F.3d 645, 660 (9th Cir.2007); *Mackinney v. Nielsen,* 69 F.3d 1002, 1008 (9th Cir.1995).

■ Defendant Penrod, as Sheriff "when functioning as the administrator of the local jail, is a County actor." *Streit v. County of Los Angeles,* 236 F.3d 552, 564–65 (9th Cir.), *cert. denied,* 534 U.S. 823, 122 S.Ct. 59, 151 L.Ed.2d 27 (2001). Since a suit against a public employee in his official capacity is a suit against the employee's employer, plaintiff's claims against defendant Penrod in his official capacity are claims against his employer defendant County. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Butler v. Elle,* 281 F.3d 1014, 1023 n. 8 (9th Cir.2002). To properly allege a Section 1983 claim against a municipal entity, such as defendant County, a plaintiff must allege constitutional violations affecting him occurred pursuant to an official municipal custom or policy. *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Hart v. Parks,* 450 F.3d 1059, 1071 (9th Cir.2006). More specifically, a plaintiff must allege there is "a 'direct causal link' between the [municipal] policy or custom and the [plaintiff's] injury, and [plaintiff] must be able to demonstrate that the injury resulted from a 'permanent and well settled practice.'" *Anderson v. Warner,* 451 F.3d 1063, 1070 (9th Cir.2006) (citation omitted); *McDade v. West,* 223 F.3d 1135, 1141 (9th Cir.2000).

or her release from the jurisdiction of the Department of Corrections or other secure facility." *Id.*

In Claims 1e, 1f, 1g, and 1h, plaintiff sues defendant Penrod in his official capacity as a policymaker for the jail, and plaintiff alleges both that defendant Penrod established County policies that injured him, and defendant Penrod failed to properly train his subordinate employees to prevent injuries to plaintiff, and these allegations are sufficient to state claims against defendant County for due process violations stemming from unconstitutional conditions of confinement and the denial of medical care, as set forth in these claims. *See, e.g., Whitaker v. Garcetti,* 486 F.3d 572, 581 (9th Cir.2007); *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1127 (9th Cir.2002). Similarly, in Claim 2a, plaintiff alleges defendant County approves and promulgates WVDC policies, and these policies do not provide constitutionally adequate conditions of confinement for civil detainees, and this is a sufficient *Monell* allegation against defendant County.

### a. Conditions of Confinement:

 The Fourteenth Amendment's due process clause requires housing SVPs or other civilly committed individuals "in conditions of reasonable care and safety [and] reasonably nonrestrictive confinement conditions [,]" including "adequate food, shelter, clothing, ... medical care" and personal safety. *Youngberg v. Romeo,* 457 U.S. 307, 324, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982); *Hydrick,* 500 F.3d at 996–97. In Claims 1f, 1g and 1h, plaintiff complains about the conditions of his confinement at WVDC. These allegations are sufficient to state a due process claim against defendants for unconstitutional conditions of confinement at WVDC. *Hydrick,* 500 F.3d at 997; *Jones v. Blanas,* 393 F.3d 918, 934 (9th Cir.2004), *cert. denied,* 546 U.S. 820, 126 S.Ct. 351, 163

L.Ed.2d 61 (2005); *see also,* e.g., *Board v. Farnham,* 394 F.3d 469, 483 (7th Cir.2005) (Pretrial detainee adequately alleges constitutional violations when alleging denial of toothpaste for three weeks); *Martin v. Sargent,* 780 F.2d 1334, 1337–38 (8th Cir. 1985) (inmate's allegations of denial of items for personal hygiene adequately state unconstitutional prison conditions claim); *Owens–El v. Robinson,* 442 F.Supp. 1368, 1379 (D.C.Pa.1978) ("The failure to provide adequate beds or other sleeping facilities, the failure to provide adequate clothing, and the failure to provide facilities and equipment for personal hygiene constitute cruel and unusual punishment for convicted inmates and violate the rights to due process and equal protection of unconvicted detainees.").

 On the other hand, Claim 1b, in which plaintiff alleges defendant Penrod "failed to follow predetermined treatment procedures as to the custody and housing of plaintiff[,]" is vague and conclusory since plaintiff does not identify the "treatment procedures" defendant Penrod failed to follow.[8] *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.1992); *Price v. Hawaii,* 939 F.2d 702, 708 (9th Cir.1991), *cert. denied,* 503 U.S. 938, 112 S.Ct. 1479, 1480, 117 L.Ed.2d 622 (1992). Thus, Claim 1b must be dismissed with leave to amend. *Ibid.*

### b. Medical Care:

 Under the Fourteenth Amendment's due process clause, the State must provide adequate medical care to SVPs and other involuntarily civilly committed individuals. *Romeo,* 457 U.S. at 324, 102 S.Ct. at 2462; *Gibson v. County of Washoe, Nevada,* 290 F.3d 1175, 1188–89 n. 9 (9th Cir.2002), *cert. denied,* 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 775 (2003);

---

**8.** Plaintiff's citation to Title 22 of the California Code of Regulations and various statutes and case law does not provide defendants

with fair notice of "the treatment procedures" defendant Penrod allegedly failed to follow.

*Hydrick,* 500 F.3d at 998. "SVPs must, at a minimum, be afforded the rights afforded prisoners confined in a penal institution. Thus, the Eighth Amendment still provides a floor for the level of protection that SVPs must receive under the Fourteenth Amendment, and because the contours of the Eighth Amendment are more defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to be applied." *Hydrick,* 500 F.3d at 998.[9]

■■■ Here, plaintiff alleges in Claim 1e that, pursuant to defendant Penrod's policies, he was neither provided with prescribed medications in the manner his treating physicians at ASH directed, nor allowed to have the medications that were sent with him from ASH, and these deprivations caused him severe pain and suffering, made him sick and listless, caused him a migraine headache that lasted for four days and severe urinary problems and great difficulty emptying his bladder. These allegations are sufficient to state a Fourteenth Amendment due process claim against defendants. *See, e.g., Wakefield v. Thompson,* 177 F.3d 1160, 1165 (9th Cir. 1999) ("[A] prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon."); *Hamilton v. Endell,* 981 F.2d 1062, 1066–67 (9th Cir.1992) (prison officials' decision to force inmate to fly in contravention of treating physician's specific orders could constitute deliberate indifference to inmate' medical needs), *overruled in part on other grounds by, Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Tolbert v. Eyman,* 434 F.2d 625, 626 (9th Cir.1970) (per curiam) (inmate states cognizable civil rights claim when he alleges he was diabetic and "the warden refused to allow him authorized medicine that he needed to prevent serious harm to his health"); *Mitchell v. Aluisi,* 872 F.2d 577, 581 (4th Cir.1989) ("[A]uthorities may not ignore the need of detainees ... for lawful prescription medications whose ministration might prevent a serious medical emergency."); *Gerakaris v. Champagne,* 913 F.Supp. 646, 651–52

9. Deliberate indifference exists when a prison official knows an inmate faces a substantial risk of serious harm to his health and fails to take reasonable measures to abate the risk. *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994); *Toguchi v. Soon Hwang Chung,* 391 F.3d 1051, 1058 (9th Cir.2004). Deliberate indifference to an inmate's serious medical needs may be manifested in two ways: either when prison officials deny, delay or intentionally interfere with medical treatment, or by the way that prison physicians provide medical care. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir.2002); *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). In either case, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or differences in opinion between an inmate and medical personnel does not rise to the level of a constitutional violation. *Gamble,* 429 U.S. at 105–06, 97 S.Ct. at 292; *Toguchi,* 391 F.3d at 1057; *Lopez,* 203 F.3d at 1131. "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds by, WMX Tech., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en banc); *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir.2006). "A 'Serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *Doty v. County of Lassen,* 37 F.3d 540, 546 (9th Cir.1994). "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.' " *Lopez,* 203 F.3d at 1131 (quoting *McGuckin,* 974 F.2d at 1059–60).

(D.Mass.1996) (pretrial detainee "state[s] a viable due process claim that defendants deliberately ignored his medical needs" when detainee alleges that even though defendants were aware he needed prescription medication and special diet, defendants denied him these items for the two days he was jailed).

■■■■ In Claim 1i, plaintiff alleges his constitutional rights and Title II of the ADA were violated when he was not provided with a wheelchair when admitted to WVDC, but "instructed to walk" and, while walking, he was "verbally assaulted" by the escorting officers. FAC at 8–9. Although "verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983[,]" *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir.1997) (citation and internal punctuation omitted); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996), *amended* by, 135 F.3d 1318 (9th Cir.1998), the failure to provide a wheelchair or crutches for an inmate may, in certain circumstances, be a constitutional violation. *See,* e.g., *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir.1995); *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). Here, however, plaintiff merely alleges he was denied a wheelchair he requested, and that allegation is insufficient to state a due process claim because, among other reasons, plaintiff does not allege a physician prescribed a wheelchair or crutches to him, jail officials were aware of and ignored this prescription, and plaintiff was injured by being required to walk. *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985) (per curiam). "Absent a constitutional deprivation, neither [defendant Penrod], nor [defendant County] may be held liable under § 1983." *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir.2006). Therefore, plaintiff's civil rights aspect of Claim 1i should be dismissed with leave to amend.

■■■■ In Claim 1i, plaintiff also alleges a violation of Title II of the ADA[10] against defendant Penrod.[11] Since prisons and jails are "public entities" for Title II purposes, 42 U.S.C. § 12131(1); *Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 1954–55, 141 L.Ed.2d 215 (1998); *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir.2001), plaintiff may raise a claim for violating Title II of the ADA against defendant Penrod in his official capacity and against defendant County. *United States v. Georgia*, 546 U.S. 151, 154, 126 S.Ct. 877, 879, 163 L.Ed.2d 650 (2006). However, to state a disability discrimination claim under Title II, a plaintiff must allege, among other things, that he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity" by reason of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir.2004);

**10.** Title II provides:
no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
42 U.S.C. § 12132. A "qualified individual with a disability" is defined as:
an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.
42 U.S.C. § 12131(2).

**11.** Under Title II, plaintiff cannot sue defendant Penrod in his individual capacity. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir.2002), *cert. denied,* 537 U.S. 1104, 123 S.Ct. 962, 154 L.Ed.2d 772 (2003).

*Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002) (per curiam), *cert. denied,* 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003). Further, to recover monetary damages under Title II, such discrimination must be intentional on the part of the defendants. *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir.2001); *Ferguson v. City of Phoenix,* 157 F.3d 668, 678 (9th Cir.1998), *cert. denied,* 526 U.S. 1159, 119 S.Ct. 2049, 144 L.Ed.2d 216 (1999). That means a plaintiff must allege the defendant had "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon the likelihood." *Duvall,* 260 F.3d at 1139. Yet, here, plaintiff does not allege the elements required to set forth a Title II claim, including that defendants had such knowledge; thus, the ADA aspect of Claim li should also be dismissed with leave to amend. *Clayburn v. Schirmer,* 2007 WL 1456065, *4 (E.D.Cal.); *Brown v. Schwarzenegger,* 2007 WL 397124, *3 (E.D.Cal.).

### c. Court access:

In Claim 1j, plaintiff alleges WVDC personnel denied his requests for access to the jail's law library because he was not a criminal defendant acting pro se. FAC at 9–10. However, to plead a cognizable claim for denial of access to the courts, a plaintiff must allege the denial of such access caused him an "actual injury" to a nonfrivolous claim regarding a conviction or conditions of confinement. *Lewis v. Casey,* 518 U.S. 343, 350–55, 116 S.Ct. 2174, 2179–81, 135 L.Ed.2d 606 (1996); *Barren v. Harrington,* 152 F.3d 1193, 1195 (9th Cir.1998), *cert. denied,* 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999). "Actual injury is defined as a specific instance in which an inmate was actually denied access to the 10 courts." *Vandelft v. Moses,* 31 F.3d 794, 796 (9th Cir.1994) (internal quotations omitted), *cert. denied,* 516 U.S. 825, 116 S.Ct. 91, 133 L.Ed.2d 47 (1995); *Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989). Here, plaintiff has wholly failed to allege any "actual injury" resulting from the alleged denial of access to the courts; thus, Claim 1j must be dismissed with leave to amend. *Lewis,* 518 U.S. at 350–55, 116 S.Ct. at 2179–81; *Barren,* 152 F.3d at 1195.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order (1) approving and adopting the Report and Recommendation; (2) denying defendants' Rule 12(e) motion for a more definite statement; (3) granting defendants' motion under Rule 12(b)(6) to dismiss without prejudice Claims 1a, 1c, 1d, 2b and 3 under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); (4) granting defendant Penrod's motion under Rule 12(b)(6) to dismiss Claim 1i against him in his individual capacity; (5) denying defendants' motion under Rule 12(b)(6) to dismiss Claims 1e, 1f, 1g, 1h and 2a; and (6) granting defendants' motion under Rule 12(b)(6) to dismiss Claims 1b, 1i and 1j, albeit with leave to amend, and requiring plaintiff, if he chooses to pursue these claims, to file a Second Amended Complaint amending these claims and raising only these claims and Claims 1e, 1f, 1g, 1h and 2a, or, in the alternative, if he chooses not to pursue these claims, to file a document stating he intends to proceed only on Claims 1e, 1f, 1g, 1h and 2a, no later than thirty (30) days from when Judge Marshall adopts this Report and Recommendation.